WALKER
v.
DUVERGER.

It was pleaded in the answer that, the slaves were disposed of by *Wharton*, with the full knowledge and consent of the plaintiffs. The evidence on this point is not sufficient to establish an abandonment of their rights by the plaintiffs; and it is proper to add, not only that there was a probable ignorance on the part of the plaintiffs (residents of another State,) of their rights, which depended upon a question of conflict of laws, but that several of the plaintiffs are either minors, incapable of making an abandonment, or married women whose acts would require the sanction of their husbands.

We consider that a tacit mortgage attached in favor of the wife, for the price of the slave *Jenny*, sold by *Wharton* during her lifetime, at the date of the receipt of that price by him, namely, May 6 1836. *Fisher* v. *Fisher*, 2 An. 776 ; *Foster* v. *Her Husband*, 6 La. 27. The right having so attached and become vested in the wife, passed at her death, to her heirs.

Whether a tacit mortgage exists in favor of the wife's heirs for the price of the paraphernal property alienated by him after her death, is a very different question, and one upon which we have not been favored with argument by either party. Our conclusion upon this point is that, the wife's heirs have not a tacit mortgage in such a case.

Tacit mortgages and preferences are in derogation of common right. They are to be strictly construed, and restrained to those cases where they are clearly granted by the lawgiver. " No legal mortgage shall exist except in the cases determined by the present Code." C. C. 3280. Article 2367 grants a legal mortgage in favor of the wife, " where the husband has received the amount of the paraphernal property thus alienated by his wife, or otherwise disposed of the same to his individual use." But the language of the article does not fairly comprise the heirs of the wife, so as to give them a legal mortgage for the price of the paraphernal property sold and appropriated by the husband after her death. Nor was there the same reason for their protection, as the lawgiver contemplated in the case of the wife herself. Subjected as the wife is, to the moral control and influence of her husband, there was a reason for interposing in her favor the safeguard of a legal fiction. No such reason exists in favor of the wife's heirs.

It is therefore decreed that the judgment of the district court be reversed. It is further decreed that the plaintiffs recover of the defendant, as administratrix of the succession of *Franklin Wharton* deceased, to be paid in due course of distribution of said estate, the sums following, to wit: the sum of $1,000, the price at which the slave *Jenny* was sold, for which price the plaintiffs are also decreed to have a legal mortgage, dating from the 6th May 1836 ; the further sum of $500, the value of the slave *Spencer ;* the further sum of $400, the value of the slave *John Hoggatt ;* the further sum of $550, the value of the slave *Priscilla ;* the further sum of $2,520, for wages of slaves after said *Mrs. Wharton's* death: the sums aforesaid to bear interest from the judicial demand, March 31 1848. It is further decreed that the costs of this suit in both courts be paid by the said succession.

## SUCCESSOIN OF DUPUY.

Where the legatees named in a testament die before the testator, and there are no debts to pay, the appointment of an executor becomes inoperative. The appointment of an

executor is a mandate, which, under our law, is limited to the execution of the legacies contained in the will, and to the payment of the debts, and the powers which it gives are to be strictly construed.

The appointment of an executor with the origin of the succession, is not a substantial testamentary disposition, independent of any other.

The seizin of an executor is a fiction of law, which does not interfere with the legal possession of the heir.

The admission of a will to probate, and the order given for its execution, are mere preliminary proceedings, necessary to the administration of the succession; but they do not amount to a judgment binding on those not parties thereto.

APPEAL from the First District Court of New Orleans, *M'Henry*, J.

*Buisson*, for the appellant. *Grailhe*, contrâ. The judgment of the court was pronounced by

Rost, J. The late *George Dupuy* died in France, sometime in December 1848. During his previous residence in this city, he made an act of last will containing but one disposition, a universal bequest in favor of his brother *Joseph Dupuy*. He appointed *Antoine Michoud* his executor. On the next day he made a codicil, ordering his executor to emancipate his slave *Betty*.

Soon after being informed of the death of the testator, the executor named probated the will and the codicil, and took out letters testamentary. He caused an inventory and appraisement of the property of the succession to be made, when a suit was instituted against him by the appellee, one of the legal heirs of the deceased, praying for the rescision of all these proceedings, and for the setting aside of the will and codicil, on the ground that the legatee therein named had both departed this life before the death of the testator, and that there was no longer any will to execute. In the petition presented by him to that effect he contends that, the succession of the deceased ought to be administered as a succession *ab intestato*, and prays to be appointed curator to the absent heirs.

The executor answered that the appointment of a testamentary executor with the seizin is, *per se*, a testamentary disposition which confers upon the executor the right of administering the succession, and of receiving a commission at the end of his administration; that, as long as the seizin is not taken from him by the heirs in the mode pointed out by law, no part of the succession can be considered as vacant; and finally, that the appointment of a curator to the absent heirs could not divest the executor of his trust, nor of his right to administer the succession.

The district judge gave judgment in favor of the appellee, annulling the order confirming *Michoud* as executor and setting aside the letters testamentary. A suspensive appeal was taken from that judgment. Sometime after the court appointed the plaintiff curator to the absent heirs, as prayed for by him. Another appeal was taken from the decree making that appointment.

The appointment of an executor with the seizin is not, as alleged, a substantive testamentary disposition, independent of any other. The functions of a testamentary executor are a mandate, differing from other mandates in this only, that it begins at the death of the principal when all other mandates end. That mandate, under our laws, where it is not enlarged by the will, is limited to the execution of the legacies contained in the will and to the payment of the debts, and the powers which it gives are to be strictly construed. Delisle, Commentary on Art. 1024 Nap. Code.

There being no testamentary dispositions to execute, and no debts to pay, in this case, the appointment of the defendant as executor has become inoperative.

It is well settled that the seizin of the executor is a fiction of law, which does not interfere with the legal possession of the heir; and also that, the admission of a will to probate and the order given for its execution are only preliminary proceedings necessary for the administration of the estate, and do not amount to a judgment binding on those who are not parties thereto. Pothier, Dispositions Testamentaires, art. 2, ch. 5, p. 360. *Succession of Duplessis*, 10 Rob. 194. We are of opinion that there is no error in the judgments appealed from.

*Judgment affirmed.*

## M'KENZIE et al. *v.* WARD.

Where the endorser of a bill payable in this State is not shown to have had, when the bill was presented for acceptance and payment, a permanent residence here, but to have been doing business here during the winter and returning to the north in the summer, a notice of protest addressed to him at the north, during his absence from the State, to the care of a person, to whose care a witness testified that the endorser had requested him to direct his letters, accompanied by proof that he had received a private letter directed to the same address, informing him of the protest, will be sufficient.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *Hornor* for the plaintiffs. *Benjamin* and *Micou*, for the defendant. The judgment of the court was pronounced by

ROST, J. This is an action upon a bill of exchange, to the order of and endorsed by the defendant. The defence is want of notice of protest; and also equities against the bill in the hands of the original holder, which it is alleged were known to the plaintiffs when they took the bill. The defendant has appealed from the judgment rendered agreeably to the prayer of the petition.

There being no evidence in the record to show want of good faith, or knowledge of the equities alleged in the plaintiffs, the only ground of defence necessary to be examined is that of want of notice of protest.

It is not shown that, when the bill was presented for acceptance and for payment, the defendant had a permanent residence in Louisiana. He was doing business in New Orleans during the winter months, and returned in the north early in summer. *Lonsdale*, one of the witnesses, states that he went with the defendant to the north a few weeks before the protest of the bill, and that he was requested by the said defendant to write to him at New York, to the care of *A. Casselli*. *Hawthorn*, another witness, testified that he was in the plaintiff's employ, and told the clerk of the notary who protested the bill, that the notice of protest addressed to the defendant, to the care of *A. Casselli*, New York, would reach him. The witness wrote to him under the same direction to inform him of the protest, and he since admitted that he had received the letter.

The notary certifies that he served the notice of protest by directing them to the defendant, care of *A. Casselli*, New York. It appears to us that no greater diligence could have been used, and that the notices thus given were sufficient in law, under a fair extension of the rule recognized in the case of *Carmena v. Bank of Louisiana*, 1 An. 369. *Judgment affirmed.*