BREAUX, C. J.
The legatees of the late Mathias Levy oppose the tax collector’s demand for the inheritance tax.
The testator, Mathias Levy, died in the city of New Orleans on the 26th day of May of the year 1904, leaving a large estate. This property consisted of cash, and property reduced to cash, United States bonds, real estate, stocks in a foreign company, silverware, jewelry, and gold coins. He was unmarried, and left no ascendants.
His will was probated and execution thereof ordered on the 30th day of May, 1904. He bequeathed part of his property to special legatees, and the remainder to universal legatees.
The account of the executors was approved by judgment on August 16, 1904. Thereafter the special and universal legatees obtained a rule on the executors to show cause why they should not pay them their legacies.
The executors answered that, in view of the statute before cited, authorizing the collection of an inheritance tax, the school board should be made a party, and such action taken regarding the right of parties, viz., the legatees and the tax collector, demanding the inheritance tax, as law and justice required. The president of the school board appeared for the bo^rd, and suggested that the board had no standing in court, and asked that the tax collector for the district in which the deceased resided when he died should be made a party.
This exception remained without action, and subsequently the tax collector was made a party. Through his legal adviser and counsel, the tax collector appeared in court and averred that the tax was due under the said statute; further:
“That the rule should be dismissed at the cost of movers, and that judgment should be rendered against movers for ten per cent, attorney’s fees on the aggregate amount of the taxes and penalties involved.”
The legatees of Mathias Levy seek to meet this demand of the tax collector by averring that the title of the inheritance tax law is defective and illegal, because it fails “to express its object in its title, and thereby falls short of the requirement of article 31 of the Constitution of Louisiana.”
The articles of the Constitution 235 and 236 set forth that “the Legislature shall have power to levy solely for the support of the public schools, a tax upon all inheritances, legacies and donations,” and provide some of the details to be followed in levying this tax.
The title of the act attacked specially refers to these articles, and declares that it is to carry them into effect, and to provide for the collection of an inheritance tax. The title, embraces the purpose of the act. It sufficiently suggests the object to every man of average understanding. State v. Hackett, 5 La. Ann. 92.
In our view, the statute is not unconstitutional for insufficiency or illegality of the title.
The second ground urged by the legatees of Mathias Levy in opposition to the claim of the tax collector for the inheritance tax is:
■ “That the act is unconstitutional for the reason that it is. retroactive and divests vested rights, in violation of article 166 of the Constitution of Louisiana, and the fifth and fourteenth amendments of the Constitution of the United States.”
*204 We have heretofore mentioned the date of the death of Mathias Levy. The statute in question was approved June 28, 1904, and was promulgated July 9, 1904, and became operative in New Orleans July 30, 1904.
The succession of Mathias Levy had not been finally closed at the date that the law became operative. The statute embraced all successions — those opened and not settled as well as to be opened.
The attack is levied against the statute on the ground that it is retroactive. There was a possible demand for an inheritance tax created by the articles of the Constitution before cited.1 The Legislature could avail itself of the delegated power to enact an inheritance tax law. From the date of the organic law every property owner held this property subject to a statute enacted to render the delegated power relating to the inheritance tax operative, and from that date, at least, the law is not absolutely retroactive.
The power to tax is without limit in its force and in the extent of its search. Generally it can only be restrained by the good sense of the citizen who brings his good influence to bear toward moderating legislation upon the subject, and to prevent erroneous and vexatious taxation. Cooley, Constitutional Limitations (7th Ed.) p. 678.
Furthermore, we have said the legatees acquired no vested right to the property bequeathed, which could enable them to successfully defend their inheritance against the demand of the state for the inheritance tax. It was property within the limits of the state, which the state could tax, for purpose mentioned, until it had passed out of the succession of the testator.
The right was not absolutely vested in the heirs, free from all possible taxation; and in consequence the alleged retroactivity of the law, even if retroactive, could be of no avail as a defense against the tax. Black, Constitutional Prohibition, 186, p. 238, p. 271; Walston v. Nevin, 128 U. S. 582, 9 Sup. Ct 192, 32 L. Ed. 544; Davidson v. New Orleans, 96 U. S. 97-104, 24 L. Ed. 616; Frellsen v. Mahan, 21 La. Ann. 79.
These legatees have unquestionably a right to the property to the extent of their respective legacies — an undisputed right, subject to no demand, except that of the state, in its sovereign capacity, for the maintenance of government.
The inequality and ununiformity of the tax presents a serious question, for, in a republican form of government, all stand or should stand equal before the law, and entitled to its equal protection, and any exaction which savors of ununiformity and inequality at once awakens attention.
We have seen that the tax falls alike on all successions under administration. It operates on all persons similarly concerned in regard to the tax since that date, and to all successions similarly situated. They are all entitled to the same protection, and arc liable for a similar inheritance tax.
The Supreme Court of the United States passed upon this point. We insert the following excerpt from a lengthy and interesting decision upon the subject:
“From these principles it is deduced that the states may tax the privilege, discriminate between relatives and between these and strangers, and grant exemptions, and are not precluded from this power by the provisions of the respective state Constitutions requiring1 uniformity and equality of taxation.”
At first blush it does appear that it is scarcely just to tax all successions opened since said time, and not yet closed, and not tax those that have been opened and closed in that time.
The vigilant frequently meet with a lar- ' ger degree of protection than they deserve. We are aware that this is not an answer to the complaint of the legatees here, who cannot be charged with dilatoriness. But sufficient answer may be found in the fact that it would be utterly impracticable to tax sue- *205 cessions that have been closed, for the very-good reason that there is no succession remaining. The inheritance has then become a fait accompli, and it is too late to tax an inheritance -which has passed into the possession and ownership of the heir, where the executor has been discharged, and all have received their quietus from any claim of the succession.
The taxing power cannot reinstate a succession for the purpose of taxation.
Here the succession of Levy has not been closed. It is in the hands of the executors, who have not been discharged. This court held, as set forth in the syllabus, that the assessment and judgment for laxes against a succession, a§ such, are legal, when the heirs have not obtained a decree of court recognizing and putting them in possession. Carter, Congreve et al. v. City of New Orleans, 33 La. Ann. 816; State v. Brown, 32 La. Ann. 1020; City of New Orleans v. Estate of Stewart, 28 La. Ann. 180; Civ. Code, arts. 872, 873.
The succession was not closed at the date that the act became operative. On the day of the homologation (that is, on August 16, 1904) the taxes were due.
It was still in time to claim these taxes, before the funds had been distributed, the legatees placed in possession, and the executor discharged. The legatees had not been paid. It was in time for the state, through its tax collector, to appear in court and demand payment of an amount due by each legatee. To that extent the account was not final. The tax collector’s petition for the tax was filed prior to payment to the legatees, who have not yet been paid.
A succession is an ideal, a juridical person, independent from those having an interest therein.
It is true, regarding this ideal, this juridical person, that le mort saisie le vif; yet the heir must be put in possession, and, until he goes into possession regularly, the succession, as relates to creditors, is considered opened and unsettled.
In this case the legatees could not go into possession without an order. They have to he placed in possession by the succession representative.
The tax is not a tax “upon the property itself, but upon its transmission by will or by descent.” Plummer v. Coler, 178 U. S. 131. 20 Sup. Ct. 835, 44 L. Ed. 998.
It is a tax upon the right to dispose of property. As long as the succession — the ideal or juridical person — remains in the hands of executors, the legislative power may classify it and subject it to a tax.
In the Plummer Case, cited supra, the right of descent was decreed subject to the inheritance tax on United States bonds, although the bond itself is exempt from taxation.
It was held to form a class of itself, which did not operate unequally. And we infer that the same reasoning sustains the view that the tax is not retroactive which is imposed on the juridical person, the succession.
The jurisprudence of this court holds that the juridical person could be named in the indictment as owner of the person from which the property was charged to have been stolen.
There was some delay, unquestionably, on the part of the tax collecting department— not to the extent, however, of relieving the succession from the necessity of paying this tax.
We have seen that among the assets of the succession there are United States bonds. The judge of the district court held that they also are subject to the inheritance tax. The United States bonds have always been protected by the lawmaker. None the less the highest court of the land hold that they are not exempt by law — an interpretation with which we are not inclined to disagree. *206 Plummer v. Coler, 178 U. S. 120, 20 Sup. Ct. 829, 44 L. Ed. 998.
In tlie cited ease the court reviewed the jurisprudence and legislation of different states upon the subject, approvingly quotes from decisions of state courts, and concludes by holding that, under the inheritance tax laws of a state, a tax may be validly imposed upon United States bonds; that there are no contractual relations between the states and the holders of the bonds; and that therefore the state, as relates to this tax, may collect it upon these bonds.
While it is true that in the states in which decisions have been rendered, referred to in the Plummer Case, there is no provision of law relieving the taxpayer from the payment of this inheritance tax, as in this state, yet, in these states, in order that legatees may receive their legacies free from taxation, it must appear that they fall within some exemption. Here there is no exception, for it does not appear that any tar: had been paid on the property.
Those successions only are exempt here whose property has borne a just proportion of taxes. These bonds have never been taxed. Exemption from taxation is subject to strict construction. Under that Constitution they cannot be held exempt. Payment of the taxes, or liability therefor, is made the sine qua non to exemption. The state has created a new source of revenue. In order to escape from contributing, the taxpayer will have to be careful to look up the assessor and make certain that he has paid taxes on the property he owns.
, The tax collector demands 10 per cent, attorney’s fees for the services of the attorney by whom he was represented in the suit for the tax.
The following from the statute is imperative:
“And it shall be the duty of the district attorney to take proceedings to enforce the provision of this act.” Section 4, Acts 1904, No. 45.
It is a complete bar to the tax collector’s claim for these services. ,
Our learned Brother of the district court condemned the legatees to pay the inheritance tax upon the amount of all property, bonds, securities, moneys, notes, jewelry, bills, etc., belonging to the successions, as shown by the inventory and account, except the sum of $1,800, value of real estate; also the amount of religious and charitable bequests.
There should also be excepted from the payment of this tax the debts of the succession, amounting to $11,998.10.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be
accordingly amended, and, as amended, it is affirmed, at the costs of appellees.
See dissenting opinion of PROVO STY, J., 39 South. 39.