LAND, J.
This is a proceeding to enforce the collection of the inheritance tax against the forced heirs and universal legatees of the deceased.
Isaac H. Stauffer died on November 14, *67 1903, leaving a last will and testament which was probated on January 15, 1904. The estate consisted of real and personal property of the appraised value of $2,050,001.53. The executors qualified, the debts amounting to $16,486.72 were paid, and between January 20, 1904, and July 25, 1904, the legatees received from the executors and partitioned among themselves cash, stock, bonds, and other property aggregating $1,299,474.65 in value.
The executors continued in office, holding the remainder of the estate, and on February 18, 1907, ruled the collector of the inheritance tax to show cause why judgment should not be entered recognizing the forced heirs and universal legatees to be entitled to possession as owners of all of the property, real and personal, left by Isaac H. Stauffer, deceased, without the payment of any inheritance tax whatsoever.
The collector in response to the rule claimed an inheritance tax against the forced heirs and legatees, calculated upon the value of the estate as per inventory, less real estate and bank stock.
The case was tried on an agreed statement, of facts, and there was judgment fixing the inheritance tax at 2 per cent on $279,810.59, amount of undistributed property remaining in the hands of the executors.
The collector appealed, and the executors in their answer to the appeal have prayed that the judgment be so amended as to decree that the heirs and legatees are not liable for any inheritance tax whatsoever.
1. It appears from the statement of facts that the succession was opened and a large portion of the property belonging to the estate was distributed prior to the passage of Act 45, p. 102, of 1904, the first inheritance tax statute enacted pursuant to the Constitution of 1898. This act was superseded by Act No. 109, p. 173, of 1906. Under the first statute the tax is to be collected “on all successions not finally closed and administered upon” and on all future successions. Under the last statute the tax is imposed on “all successions not finally closed, or in which the final account has not been filed.”
It would seem that the succession of Stauffer was not finally closed at the date of the passage of the act of 1906, at least quoad the residuum of the estate in the hands of the executors.
Counsel for the executors do not deny that the succession of Stauffer falls within the grasp of the act of 1906, but contend that the inheritance in question vested in the forced heirs and universal legatees by operation of law, prior to the passage of Act No. 45, p. 102, of 1904, and that such rights cannot be constitutionally divested by subsequent legislation. The same contention was raised, considered, and overruled in Succession of Levy, 115 La. 378, 39 South. 37. We held that Act No. 45, p. 102, of 1904, did not violate the Constitution of the state of Louisiana. The case was carried by writ of error to the Supreme Court of the United States, which held that the act did not deprive the universal legatees of their property without due process of law or deny to them the equal protection of the law. Cahen v. Brewster, 203 U. S. 552, 27 Sup. Ct. 174, 51 L. Ed. 310. Article 235 of the Constitution of 1898 empowered the Legislature to levy a tax upon all inheritances, legacies, and donations. The basis of this tax is the amount received by the heir, legatee, or donee, which, as a general rule, cannot be ascertained without an administration of the estate. The next article, providing that the tax shall not be enforced when the property donated or inherited shall have borne its just proportion of taxes, makes it necessary in all eases to inquire what property inherited or donated is thus exempted from the imposition of the tax. The inheritance to be taxed is therefore, under the Constitution, represented by things received by the heir or legatee which *69 have escaped taxation or have not contributed to the support of the government. The Supreme Court of the United States in the case cited, after referring to its own jurisprudence on the subject of inheritance taxes, said:
“There is nothing, therefore, in those cases which restrains the power of the state as to ■the time of the imposition of the tax. It may select the moment of death or it may exercise its power during any of the time it holds the property from the legatee. ‘It is not,’ we said in the Perkins Case, ‘until it has yielded its contribution to the state that it becomes the property of the legatee.’ ”
This high authority is conclusive on the proposition that it is competent for the Legislature to impose a tax on inheritances which are in gremio legis, and which have not as a matter of fact passed into the possession of the heirs or donees. The law taxes the transmission of the property by will or descent, or, in other words, the succession. Cahen v. Brewster, supra. By the fiction of the law, “le mort saisit le vif,” the heir is seised of right, but not in fact, until he accepts the succession and is sent into or takes possession according to law. As long as the property is under administration it remains in the custody of the law, and the rights of heirs and legatees are in abeyance until the administration is closed. While an inheritance tax is not on the property itself, it is measured by the value of the property actually received by the heir or legatees, and is not exigible or enforceable until the right of seisin is merged into seisin in fact of particular property. The transmission of the property so received is the inheritance taxable under our Constitution and statutes. Hence until this transmission is effected the inheritance is taxable.
The statute imposing such a tax on successions not closed is the law of the land, and, if its provisions run counter to prior laws and jurisprudence, the latter must give way to the last expression of the legislative will. . As Act No. 109, p. 173, of 1906, subjects the succession of Stauffer to the inheritance tax as an open succession, the only logical argument that can be advanced against the law is one of unconstitutionality. On this point we see no good reason to change our views expressed in the Succession of Levy, supra, which we think are re-enforced by the principles enunciated in the same case by the Supreme Court of the United States.
2. The collector claims an inheritance tax on $1,618,579.81, the inventoried value of all of the property left by Issac H. Stauffer, after deducting debts and property which had borne its just proportion of taxes. All of this large amount of property, except $279,810.59, had passed out of the hands of the executors and had been delivered to the heirs and legatees before the passage of Act No. 45, p. 102, of 1904, the first inheritance tax statute. The decision in the case of Succession of Levy, supra, was predicated on the premise that the property donated was still in the succession, and had not passed into the possession of the legatees. Where the heir’s seisin in right has merged into seisin in fact, the right so vested cannot be divested without a violation of the constitutional prohibition contained in article 166. We know of no law existing at the time which inhibited the forced heirs and universal legatees of Stauffer, with the consent of executors and of all parties concerned, from taking possession of a portion of their inheritance. They had the legal right to demand possession of the whole estate on giving security for the payment of debts and special legacies, and the delivery by the executors to them of a portion of the estate, while perhaps irregular, was not illegal. The state had no right to complain. The statutes in question should not, if possible, be construed as retroactive or as impairing vested rights. By assuming that the lawmaker intended to tax successions, as *71 they existed at the date of the passage of the acts imposing the tax, no vested right is disturbed. Where the property has been transmitted, the tax is not operative.
The individual interest of I. H. Stauffer in the commercial partnership of Stauffer, Eshleman & Co. was appraised at $264,629.57, and it is admitted that said firm has been regularly assessed for all of its property and the taxes due thereon have been regularly paid. It is conceded that all the property of the partnership having borne its just proportion of taxes is not subject to the inheritance tax under the express provisions of act 236 of the Constitution. The attorney for the collector, however, contends that the interest of I. H. Stauffer as a partner in said firm has not been assessed and taxed, and therefore is subject to inheritance taxation. Counsel admits that he has never heard of an instance of such double taxation, but argues that the interest of a partner in a commercial firm is a taxable entity. Counsel likens such interest to that of a stockholder in a corporation. There is some analogy, but many material differences, between a partner and a stockholder. For the purposes of taxation, all the property of a commercial firm represents all interests therein, both of the partnership and of its members. Such interests have never been divided for the purpose of taxation, and we assume never will be, because double taxation more gross and unjust ■can hardly be imagined.
Having considered the legal fictions of the seisin of the heir, the indivisibility of successions, and the distinct taxable interest of a commercial partner in the property of the firm, we conclude that there is nothing in any of them to warrant a reversal or amendment of the judgment appealed from.
Judgment affirmed.
See dissenting opinion of PROYOSTY, J., 43 South. 930.