138 So.2d 438 (1962)
Queen Esther SIMPSON, Administratrix, Plaintiff and Appellee,
v.
Virgie Lee COLVIN (Simpson), Defendant and Appellant.
No. 490.
Court of Appeal of Louisiana, Third Circuit.
March 8, 1962.
James C. Terrell, Jr., Leesville, and Cavanaugh, Hickman, Brame & Holt, by A. B. Cavanaugh, Lake Charles, for defendant-appellant.
Ted R. Broyles, Leesville, for plaintiff-appellee.
Before CULPEPPER, SAVOY and HOOD, Judges.
HOOD, Judge.
Plaintiff, in her capacity as administratrix of the Succession of Isom Simpson, deceased, instituted this summary ejectment proceeding under the provisions of LSA-R.S. 13:4911 et seq. (now LSA-C.C.P. Article 4701 et seq.) seeking to compel the defendant to vacate some real premises alleged to belong to the succession. The premises are located in Leesville, Louisiana, and are known as the Blue Heaven Bar.
The defendant, Virgie Lee Colvin, filed an answer alleging that she is the mother of three minor children of the decedent, that these children reside with her on this property, and that a judgment evicting her would have the effect also of evicting the children. Defendant also filed an intervention, in her capacity as natural tutrix of these minor children, alleging that the children, through her as their natural tutrix, have never received a notice to vacate the premises, that said children are the "record owners" of all of the property left by the decedent, that the administratrix of the decedent's succession has no authority to displace the children, and that defendant as *439 their natural tutrix desires to become a party-defendant in this suit. In the alternative, she alleges that the minor children were acknowledged by the decedent before his death, and that they are in necessitous circumstances. On these allegations defendant contends that plaintiff's demands should be rejected.
By agreement of counsel the rule was fixed for trial on February 10, 1961. The day before the rule came up for hearing, plaintiff filed an exception entitled "Exception of Improper Cumulation of Actions and of Prematurity as to Intervention," in which she contends that insofar as the intervention seeks to establish or have determined the question of heirship it is an improper cumulation of actions and is premature.
Following the hearing held on February 10, 1961, judgment was rendered by the trial court maintaining the exception of improper cumulation of actions and of prematurity filed by plaintiff and dismissing the petition of intervention. Judgment further was rendered making the rule absolute, and ordering defendant to vacate the premises. From that judgment defendant took a suspensive appeal to this court, and on that appeal we reversed the judgment of the district court and remanded the case. See Simpson v. Colvin, La.App. 3 Cir., 131 So.2d 828.
The only issue presented to us on that appeal was whether the trial court was correct in maintaining the exception of improper cumulation of actions and of prematurity as to the intervention. We felt that, in view of the allegations contained in the intervention, and particularly the averment that the minor children are "record owners" of all the property left by the decedent, the trial court erred in refusing to consider the intervention.
After the case was remanded it was again tried and judgment was rendered by the district court on October 16, 1961, in favor of plaintiff and against defendant, individually and as tutrix for her minor children, ordering defendant and the three minor children to vacate the premises. The defendant has appealed from that judgment, and the case is before us for the second time on that appeal.
The defendant contends that the trial court erred in ordering her and the children to vacate the premises without requiring the administratrix to prove two things: "First, the administratrix was not required to prove defendant-intervenor's minor children to be illegitimate. Second, the administratrix was not required to prove that the realty, which forms the basis of this suit, was required to pay debts of the succession." Defendant does not contend that the trial court erred in any other respect.
As has already been stated, we remanded the case to the trial court largely because of the allegation contained in the intervention that the minor children are "record owners" of the property from which plaintiff seeks to evict them. We think the first question to be considered, therefore, is whether the minor children are record owners of that property. If they are, in the sense that title was vested in them rather than in the decedent, then that property would not comprise a part of the estate of the decedent, and plaintiff as administratrix of his estate would have no right to administer the property or to evict anyone from it. The evidence does not establish, however, that the children are record owners of the property. Under the evidence presented, we assume that title to this property was vested in the decedent at the time of his death, and that it constitutes a part of his estate and a part of the property being administered by the plaintiff. The only right, title or interest which the children have in the property, if they have any interest at all, is that which they may have acquired by inheritance from the decedent, Isom Simpson.
Defendant contends, however, that these minors are the children of the decedent, that as such they are his forced heirs, and that under the doctrine of "le mort saisit le *440 vif" they became owners of the property by operation of the law immediately upon his death.
The evidence establishes that the defendant, Virgie Lee Colvin, and the decedent began living together as man and wife in 1944, and that of this relationship three children were born, the youngest having been born on September 5, 1953. Virgie Lee Colvin and the decedent married on June 4, 1956, which was after all of the children had been born. Before and after the marriage, however, the decedent informally acknowledged the three children as his own.
After the death of Isom Simpson, plaintiff was appointed as administratrix of his succession by judgment dated September 9, 1960. In that judgment the court decreed "that the marriage between Isom Simpson, decedent, and Virgie Lee Colvin (Simpson) celebrated on June 4, 1956, in Vernon Parish, Louisiana, be and the same is hereby declared null and void; and that said marriage produced no civil effects as to Virgie Lee Colvin (Simpson) reserving to the alleged children of Isom Simpson to assert their rights at a proper time and through proper proceedings." A copy of this judgment was introduced in evidence in this case, but there is nothing in the record which is before us to indicate the basis upon which the marriage was declared to be null and void.
Defendant contends that in view of the fact that she married the decedent after the birth of the children and that she and the decedent have acknowledged the children as their own, the children must now be regarded as the decedent's forced heirs. She contends that the judgment rendered by the District Court on February 10, 1961, decreeing their marriage to be null and void is not binding on the children because the children were not parties to that proceeding. Plaintiff, on the other hand, contends that the decedent did not acknowledge the children, but that even if he did the acknowledgment was without effect because the subsequent marriage between the decedent and the mother of the children has been decreed to be null and void. Ordinarily it would be necessary to determine whether the children are legal heirs of the decedent, because if they are they would have a right to intervene in this proceeding, whereas they would not have the right to do so if they had no interest in the estate.
In this instance, however, we find it unnecessary to consider that issue, because we have concluded that plaintiff is entitled to the relief which she seeks, even though the children should be held to be forced heirs of the decedent. We express no opinion, therefore, as to whether the evidence establishes that defendant's minor children are or are not heirs of the decedent, but for the purposes of this suit we will simply assume that they are forced heirs of Isom Simpson, and that as such they have a right to intervene in this proceeding.
The next issue presented is whether the administratrix in this case has the right to evict defendants, some of whom are assumed to be forced heirs of the decedent. Defendant seems to concede that the administratrix would have the right to dispossess her and the children if the property is needed to pay debts of the succession, but she contends that the children could not be evicted unless the premises which they occupy are needed for that purpose.
Article 3211 of the LSA-Code of Civil Procedure provides that:
"A succession representative shall be deemed to have possession of all property of the succession and shall enforce all obligations in its favor."
The official comments below this article, particularly comments (a) and (d), indicate that the redactors contemplated a departure from the prior law relating to seizin, and further that the succession representative should be required to "take possession as soon as practicable." It seems to us that under the provisions of the above quoted article of the Code of Civil Procedure the administrator of an intestate succession *441 now has full seizin and possession of all property belonging to the estate. The provisions of the article are clearly procedural in nature and apply to the administratrix in this case.
We have been referred to no Louisiana case where the court considered the question of whether the rights of the administrator of an intestate succession to possession of property belonging to the estate are paramount to the rights of the heirs to possess such property. The courts have indicated, however, that the executor of a testate succession, with seizin, has a right to possession which is paramount to the right of possession which is vested in the heirs. Under the provisions of LSA-C.C.P. Article 3211, we think the administrator of an intestate succession has all of the rights which were formerly vested in the executor of a testate succession who had been given seizin.
Counsel for defendant cites to us and relies on the following language which was used by the Supreme Court in Succession of Dupuy, 4 La.Ann. 570: "It is well settled that the seizin of the executor is a fiction of law which does not interfere with the legal possession of the heirs; * * *." This statement was dictum, however, and in later cases the Supreme Court has rejected the idea that the possession of the heir is superior to that of the executor who has been given seizin.
In Bird v. Jones, 5 La.Ann. 643, for instance, the Supreme Court said: "To enable the executor to fulfill the trust, the seizin was expressly given him. * * *. It is obvious, from the language of our Code and other legislation, that the actual seizin of an executor is something distinct from and paramount to the fictitious seizin, which, it is said, is vested in the heir immediately upon the death of the ancestor."
The above quoted language from Bird v. Jones, supra, was quoted with approval by the Supreme Court in Succession of Serres, 135 La. 1005, 66 So. 342. After referring to the Bird case, the Court then reviewed the articles of the Civil Code relating to seizin, and more particularly Articles 1659 and 1660 (since repealed and replaced by LSAC. C.P. Art. 3211) which permitted a testator to grant the seizin of all or part of his succession to the executor. The Court noted that the executor in the discharge of his office could "dispossess the heir of the house in which he was born and lived all his life and this notwithstanding that the heir is `considered seised' of the succession." The Court further said:
"The office and seisin of the executor enable him, therefore, to dispose of the title and to control the possession of all the property of the succession, and the title and seisin of the heirs are among the rights that may be thus disposed of and controlled. Those rights must yield to the paramount authority and rights of the executor; * * *." (Emphasis added)
* * * * * *
"We conclude, therefore, that the dictum in the opinion in Succession of Dupuy, to the effect that `the seisin of the executor is a fiction of law which does not interfere with the legal possession of the heir,' is misleading, and that the law is correctly interpreted in the opinion in Bird v. Succession of Jones, in the statement that:
"`The actual seisin of an executor is something distinct from and paramount to the fictitious seisin, which, it is said, is vested in the heir immediately upon the death of the ancestor.'"
Counsel for defendant also cites and relies on Succession of Stevens, 137 La. 613, 69 So. 26, and Richey v. Hill, La.App. 2 Cir., 84 So.2d 291. Neither of those cases are relevant to the issues presented here, but they apparently were cited because in each case the Court quoted with approval the following excerpt from Tulane University of Louisiana v. Board of Assessors, 115 La. 1025, 40 So. 445:

*442 "`Our Code leaves no room whatever for doubt or surmise as to the fact of the property of a deceased person being transmitted directly and immediately to the legal heir, or, in the absence of forced heirs, to the universal legatee, without any intermediate stage when it would be vested in the succession representative, or in the legal abstract called "succession." The law on that point is so explicitly stated in the Code, and has been so frequently applied, that nothing more is needed here than to give the numbers of the articles of the Code bearing upon the point, and that pages of the Reports where a few of the very numerous decisions are to be found: Articles 940, 941, 942, 943, 944, 945, 946, 947, 1609, 1611, and 1671; Womack v. Womack, 2 La.Ann. (339) 341; Frazier v. Hills, 5 La.Ann. (113) 114; Addison v. (New Orleans Sav.) Bank, 15 La. (527) 529; Succession of Dupuy, 4 La.Ann. (570) 571; Burbridge v. Chinn, 34 La.Ann. 681.'"
In the Tulane University case, supra, the issue presented related to ownership, rather than possession, of the property. The University sought to enjoin the collection of taxes on property which had been bequeathed to it under a universal legacy, contending that ownership of the property became vested in the plaintiff, as the universal legatee, by operation of law immediately upon the death of the testator. The defendant Board of Assessors conceded that property owned by the university was exempt from taxes, but it argued that executors had been appointed for the succession, that they had been given seizin of the estate and had taken possession of it, and accordingly that title was then vested in the succession (which was not tax exempt) rather than in Tulane University. The Court decreed that under the doctrine of "le mort saisit le vif" the property included in the universal legacy became vested in Tulane University upon the death of the testator, and that accordingly it was exempt from taxes after the testator's death, even though the executors had seizin and possession of the property. No issue was raised in that case as to the right of the executors to have possession of the property, but we think the court recognized that the right of the executors to possession was paramount to that of the universal legatee, because it indicated that under the provisions of Article 1671 of the LSA-Civil Code the university could not divest the executors of seizin except by leaving in the hands of the executors a sum sufficient to pay the movable legacies.
We agree with the quoted statement from the Tulane University case. The maxim "le mort saisit le vif" has been recognized in Louisiana law since 1825. LSA-C.C. Articles 940-948, 1609, 1610. We think the rights acquired by the heir or universal legatee immediately after death under this maxim, however, are rights of ownership, or of legal, proprietary or civil possession, with all of the advantages which flow from those rights, such as accretion, prescription and fruits, but we also are convinced that the heir or universal legatee does not necessarily acquire actual or corporeal possession of the property immediately after death under that doctrine or under the above cited articles of the Civil Code. In a case such as the instant one, where there is an administration of the estate of a decedent, we think the law gives to the administrator or executor, subject to the supervision and control of the court, the actual possession of the property belonging to the estate during the administration of the succession, although the legal heirs or universal legatees may have the ownership, or the legal or civil possession of such property. See XV T.L.R. 576-591; Succession of Serres, supra; Succession of Martin, 234 La. 566, 100 So.2d 509.
In Succession of Martin, supra, the decedent Martin was named as a residuary legatee under the will of Newton Blanchard Smith. Martin died, however, while the Smith Succession was still under administration, *443 and accordingly Martin had not obtained actual possession of any of the property which had been bequeathed to him during his lifetime. The question presented was whether the executor of the Martin Succession could be compelled to pay inheritance taxes on the legacy to Martin under Smith's will, while the Smith estate was still in custodia legis. The Supreme Court held that no inheritance taxes were due by the Martin estate on that legacy, because although Martin had acquired seizin of right of the legacy, he had not acquired seizin in fact. The following are excerpts from the court's opinion:
"In the instant case the transmission of Smith's property to the living had not yet occurred at the time of Martin's death. The property bequeathed to Martin by Smith's legacy was still in Smith's succession, `an ideal, a juridical person, independent from those having an interest therein'. See Succession of Levy, supra [115 La. 377, 39 So. 37, 8 L.R.A.,N.S., 1180]. It is only at the moment that the Lynn heirs are sent into possession of the property comprising the Smith legacy that the transmission from the dead to the living will occur, making the inheritance tax exigible by the state. * * *"
"* * * under the reasoning of this court in the above cases dealing with Louisiana inheritance tax law, Martin was seized of right, but not in fact, because he never was sent into possession of his legacy, or even accepted it. The Smith property in Louisiana remained under administration by the Louisiana executor, and hence remained under the custody of the law, and when Martin died his right to the Smith legacy was still in abeyance. Upon the death of Martin, the Lynn heirs were seized of right of the Smith legacy as the residual legatees of Martin, and under the decisions of this court the Louisiana inheritance tax on the Smith legacy will become due when the Lynns' right of seizin is merged into their seizin in fact of the property bequeathed to Martin by Smith."
A similar question was presented in Succession of Stauffer, 119 La. 66, 43 So. 928, in which case the Supreme Court said:
"* * * By the fiction of the law, `le mort saisit le vif,' the heir is seized of right, but not in fact, until he accepts the succession and is sent into or takes possession according to law. As long as the property is under administration it remains in the custody of the law, and the rights of heirs and legatees are in abeyance until the administration is closed. While an inheritance tax is not on the property itself, it is measured by the value of the property actually received by the heir or legatees, and is not exigible or enforceable until the right of seisin is merged into seisin in fact of particular property. The transmission of the property so received is the inheritance taxable under our Constitution and statutes. Hence until this transmission is effected the inheritance is taxable." (Emphasis added.)
The fact that there can and does exist a distinction between the right of possession, on the one hand, and possession in fact, on the other, without violating the concept of seizin as to certain types of succession beneficiaries, is shown by the language used in Article 942 of the LSA-Civil Code, which provides:
"The heir being considered seized of the succession from the moment of its being opened, the right of possession, which the deceased had, continues in the person of the heir, as if there had been no interruption, and independent of the fact of possession." (Emphasis added.)
We conclude that, under the circumstances presented here, plaintiff in the instant suit, as the administratrix of the Succession of Isom Simpson, is entitled *444 to the actual or corporeal possession of the property belonging to that estate, even though it may not have been shown that such property must be sold in order to pay debts of the succession. The administratrix certainly would have the right to dispossess an unauthorized occupant, who is not an heir, from succession property, and we think she also has the authority, subject to the supervision of the court, to dispossess occupants of succession property who are or may be legal heirs, but who have no legal basis for claiming the right of possession other than the fact that they are heirs. In our opinion the right of the administratrix to obtain seizin or possession of the subject property is not conditioned on the fact that it will be necessary to sell that property to pay debts or that the administratrix needs possession for any other particular purpose.
The apparent harshness of this rule is necessitated by the broad powers granted to, and heavy duties imposed upon, succession representatives by the Code of Civil Procedure. LSA-C.C.P. Article 3191 et seq. It is ameliorated to some extent, however, by other provisions of the code which authorize acceptance of successions without administration, and which enable heirs and legatees in some instances to obtain actual possession from the succession representative prior to the completion of the administration by means of contradictory proceedings with him. LSA-C.C.P. Articles 3001-3062; LSA-C.C.P. Articles 3362 and 3372.
Assuming, however, that defendant is correct in her contention that plaintiff is not entitled to possession unless a need for seizin is shown, we think the evidence clearly shows that her demands in this case are warranted. The inventory and appraisal filed in the succession proceeding shows that the decedent left immovable property valued at $7,500.00, and movable property worth $2,763.31, his entire estate having a total value of $10,263.31. The real premises occupied by defendant are valued at $5,500.00, or more than one-half the value of the entire estate, and a substantial part of the movable property belonging to the succession is located in those premises and is in the possession of the defendant. The administratrix testified that the estate owes debts amounting to from $5,000.00 to $7,000.00, although she states that it will not be necessary to sell the premises occupied by defendant in order to pay those debts. It is apparent that the debts of the estate are relatively large, and that defendant is in possession of most of the succession property. Under the provisions of Article 3221 of the LSA-Code of Civil Procedure plaintiff is required to preserve, repair, maintain and protect the property of the succession. Article 3191 provides that the succession representative has the duty of collecting, preserving and managing the property of the succession, and that he shall be personally responsible for all damages resulting from his failure so to act. There is nothing in the record which indicates that the administratrix in this case is being arbitrary or capricious in her demands for possession, particularly in view of the duty imposed on her to collect, preserve, manage and protect the succession property. If it should be necessary, therefore, for the administratrix to justify her demands for the relief which she seeks here, we think the evidence adequately establishes that she is entitled to possession of the subject premises.
For the reasons herein set out, therefore, the judgment of the trial court is affirmed. Defendant-appellant is condemned to pay all costs of this appeal.
Affirmed.