GLADNEY, Judge.
William O. Richey instituted this peti-tory action to be declared the owner of and restored to possession of 86.65 acres of land. It was the third action brought in the District Court in Rapides Parish involving this property. The plaintiff herein, on September 16, 1946, executed a timbei deed to William Earl Kolb, after which a survey was made of the land therein involved which delineated between the properties of Richey and Hill a line> hereinafter referred to as the “red line.” The survey indicated plaintiff owned property which he was not aware of at the time he sold his timber to Kolb and as a consequence of this discovery Richey instituted a suit against Kolb for additional consideration for the timber sold. This suit was subsequently compromised and settled. During the year 1948 all of the merchantable timber ten inches and up sold by Richey to Kolb was removed. Within a year thereafter Robert L. Hill, the identical defendant in this petitory action, instituted a suit against W. O. Richey and the latter’s vendees of the timber above referred to. In his action Hill prayed to be restored to possession of the land involved and for damages arising from the cutting of the timber. This suit was eventually appealed to the Supreme Court, Hill v. Richey, 221 La. 402, 59 So.2d 434, 436, which rendered judgment in Hill’s favor but remanded the case to the district court for the purpose of fixing the amount of damages. The instant suit was filed by William O. Richey against Roben. Lee Hill on December 9, 1952, and has been appealed to this court by Hill who is aggrieved by a judgment recognizing Richey as the owner of the property in dispute.
For a better understanding of the issues involved herein we quote the following excerpt from the opinion of the Supreme Court, since the identical land in dispute *292 herein was involved in the suit of Hill v. Richey:
“Plaintiff Hill is the owner of a tract of land comprising approximately 617 acres. Adjacent to and east of his land, defendant W. O. Richey owns a tract containing approximately 520 acres. Both the plaintiff and this defendant claim title to the disputed area from a common author. Plaintiff Hill acquired his interest by inheritance from his wife, Mrs. Hattie Clark, the vendee in 1898 of Mrs. Clemmie Brian. Defendant inherited his tract from his father and mother, whose immediate author in title had acquired the land from Mrs. Brian in 1910.
“This Jitigation arose under the following circumstances: Defendant Richey sold the timber on his tract of land to W. E. Kolb, who in turn sold it to the Kellogg Lumber Company. Before the cutting of the timber for which plaintiff seeks damages, the purchaser of the timber caused a survey to be made of the boundary between the Hill and Richey tracts to establish the extent of the property included in the timber purchase. Defendant Richey had the line established by this survey marked on the ground in red, and this line is the western boundary of defendant’s plantation according to the calls in his deed. This line will be hereinafter referred to as ‘the red line’. On a large map or plat introduced in evidence by the plaintiff this line which we have just described is shown in red. Plaintiff contends that the boundary line between these two plantations is located somewhat to the east of the red line, beginning at a common point on the north and proceeding in a southerly direction to the southern boundary of Section 25, Township 5 North, Range 4 West. This line has been marked in yellow on the map offered in evidence and will be hereinafter designated as ‘the yellow line’. The tract of land of which plaintiff seeks to be maintained in possession is the area between these two lines and is in somewhat the shape of an inverted ‘V’. On the north these two lines have an apex or common point. Both run to the southern line of Section 25, and at that, point the distance between them is about 24.56 chains. In the early part of 1948, the actual cutting of the timber was begun on the land situated ‘between the two lines, and within a year, in June, 1948,. the present suit was instituted.
“The evidence is convincing and establishes beyond question that for many years the line now designated as the ‘yellow line’ has been recognized by the owners as the boundary line between their respective plantations, and the area between these two lines was considered a part of plaintiff’s lands or plantation. At the time of the timber sale made by defendant Richey, he pointed out to the purchaser this yellow line as the dividing line between his plantation and that of plaintiff, or called to his attention that the land west of the yellow line did not belong to him but belonged,to another. After the survey was made of the red line, the defendant Richey instituted suit against the purchaser of the timber, alleging that at the time of the sale he did not know that he owned the area between the two lines, that the timber thereon was worth $5000.00, and that he was entitled to recover this amount from the purchaser. That suit was compromised by the purchaser’s paying an additional consideration for the timber sold.
“The yellow line is marked on the ground by blazes on trees, by fences, or by remains of old fences such as old pieces of wire in the trees, and old surveyor’s marks on the trees are evidence that the line had been surveyed at some time in the past. Along the entire length of this line there is a fence or evidence of a fence except along portions at the north and south ends. Plaintiff, now 76 years of age, testified that there had been a fence on this line since he was a 10-year-old boy; that the fence now standing was *293 built by him in the early 1930’s, and that it had been repaired by him or his tenants from time to time since then. Defendant Richey himself admitted that there was a fence along portions of this line when his father bought the property in 1918, and that he himself constructed a fence along a portion of this line. Both plaintiff and defendant had cross fences running east and west which tied onto the existing fence along this line. Along the north and south portions of the line where there are no fences the land is low and swampy and under standing water most of the time and during part of the year is covered by water from one and one-half to three and one-half feet deep. Along these portions of the line there are hacks and blazes on the trees, evidently made by a surveyor, and ‘No Trespassing’ signs bearing Hill’s name. Defendant Rich-ey had likewise posted the property on the east side of the line. The evidence shows that for many years prior to this litigation this yellow line was generally recognized and accepted not only by plaintiff and defendant but by the entire community as being the boundary line between these two plantations.
“Plaintiff Hill or his wife, who had resided on this plantation since 1913, had actually farmed and cultivated all portions of the land between the two disputed lines which were susceptible of cultivation. They themselves or their tenants had grown and cultivated crops of corn, cotton, and hay, and these operations had been continued to the yellow line. Hill had grazed cattle, sheep, goats, and hogs over the entire tract, including the swampy portions, and on occasions had rented the property to others for grazing their cattle. From the swampy areas his tenants from time to time had cut ties. Furthermore, he had some livestock grazing on the tract at the time of the trial. He had also sold the timber on three different occasions from the swampy areas, and his purchasers were engaged in the cutting and removal of such timber on each occasion for several months. On one of these occasions a large crew, whose operations were extensive, actually were engaged in the cutting and removing of timber for approximately eight months.
“There is no evidence that prior to this controversy the red line had ever been surveyed on the ground or that defendant Richey ever at any time had or took corporeal or actual possession of any part of the land between these two lines.”
The decision of the Supreme Court in Hill v. Richey, since it involved a posses-sory action is decisive only as to the extent and quality of possession of Hill during the year preceding the filing of this suit. We must assume, therefore, that the findings of fact relating to the possession of Hill beyond such period should not be considered conclusive.
Upon the trial of this petitory action Richey and Hill have not only placed in evidence their deraignments of title but have augmented the record of Hill v. Richey, which has become a part of the instant record, by additional testimony and evidence relating to the extent and duration of Hill’s possession. The muniments of title found in Richey’s claim of ownership describe the land in dispute herein but the records supporting Hill’s title do not. Hill acquired the property from the estate of his wife, Mrs. Hattie Clark Hill, in whose succession judgment was rendered on March 10, 1925, recognizing Hill as the universal legatee and sending him into possession of the property therein described and “any and all other, whether herein included or not, which may have belonged to the succession of his deceased wife.” The record establishes that Mrs. Hattie Clark Hill died on November 25, 1924.
Inasmuch as the property in dispute is not described in any of the documents or records through which Hill claims ownership, he is relegated to title by possession, and in order to place this claim before the *294 court defendant filed pleas of prescription of ten and thirty years. An examination of the deeds and documents discloses no basis for the plea of prescription of ten years, nor does counsel for defendant urge this plea. This leaves for our consideration the following issues: first, the extent and duration of Hill’s possession and that of his authors in title, and second, whether or not the possession of Mrs. Hill may be tacked or joined to the possession of Hill in order to complete thirty years of adverse possession and establish the claim of ownership based on the thirty year plea of prescription.
When this case was tried Richey called fifteen witnesses to controvert Hill’s plea of prescription of thirty years based upon Articles 3499 through 3505 of the LSA-Civil Code. The purpose of adducing this evidence was to show that the possession of Hill and his author in title was not continuous. The decision of the Supreme Court in Hill v. Richey adjudicated in fact the nature, quality and extent of Hill’s possession for the year preceding the institution of said suit. The record in this case has not persuaded us that the extent, nature and quality of the possession during the thirty years preceding the disturbance of Hill’s possession was materially different from that determined by the Supreme Court. We, therefore, are of the opinion that the plea of prescription of thirty years relied upon here must be sustained, provided the possession of Mrs. H-ill may be tacked or joined to that of the defendant herein.
In assigning reasons for the judgment from which appealed, our brother of the district court held that since the lands described in the judgment in the succession proceedings of Mrs. Hill did not include the tract here in dispute there was no privity of estate between Hill and his wife. The fact that the property in dispute between Richey and Hill was not expressly described in the transfer of title relied upon by Hill is not conclusive herein. We recognize the validity of the ruling that for the purpose of claiming land under the prescription of thirty years in a petitory action several successive possessions cannot be joined to show a continuous adverse possession unless there is privity of estate or contract between the occupants, and that in the absence of privity the several acts of adverse possession are construed as nothing more than a series of trespasses, and on the termination of each of those acts the possession returns by operation of law to the rightful owner of the immovable. See Coats v. Lee, La.App.1954, 70 So.2d 229; Beam v. Dudding, La.App.1949, 43 So.2d 73; Buckley v. Catlett, 1943, 203 La. 54, 13 So.2d 384; Sibley v. Pierson, 1910, 125 La. 478, 51 So. 502; Harang v. Golden Ranch Land & Drainage Co., 1918, 143 La. 982, 79 So. 768; Emmer v. Rector, 1932, 175 La. 82, 143 So. 11.
In American Jurisprudence, Volume I, page 880, privity is thus explained:
“Privity denotes merely a succession of relationship to the same thing, whether created by deed or by other act, or by operation of law. If one, by agreement, surrenders his possession to another, and the acts of the parties are such that the two possessions actually connect, the latter commencing at or before the time the former ends, leaving no interval for the constructive possession of the true owner to intervene, such two possessions are blended into one, and the limitation period upon the right of such owner to reclaim the land is thereby continued. Indeed, the purpose of a continuous possession is the continuous ouster of the owner. All that is necessary to privity between successive occupants of property is that one receive his possession from the other by some act of such other or by operation of law, the one taking under the other as by descent, will, grant, or other transfer of the possession. Thus, it is apparent that privity exists between the ancestor and his heirs, and the grantees of such heirs.”
The above quoted statement must be read in connection with statutory limitations as *295 imposed by the LSA-Civil Code. The Code provides, Article 3498, that a possessor is allowed to make the sum of possession necessary to prescription by adding to his own possession that of his author, in whatever manner he may have succeeded by a universal or particular, a lucrative or an onerous title. The word “author” is defined in Article 3494 to be the person from whom another derives his right, whether by universal title as by succession, or by particular title, as by sale, by donation, or any other title, onerous or gratuitous, and declares further that in every species of prescription the possession of the heir may be joined to that of the ancestor, and the possession of the buyer to that of the seller. Article 3495 says that to enjoy this advantage the different possessors must have succeeded each other without interval or interruption. To hold that privity of estate does not occur except through description of the subject property in the muniments of title connecting the possessors, ignores the effect of Article 1609 of the LSA-Civil Code, which provides :
“When, at the decease of the testator, there are no heirs, to whom a proportion of his property is reserved by law, the universal legatee, by the death of the testator, is seized of right of the effects of the succession, without being bound to demand the delivery thereof.”
Since 1825 the maxim le mort saisit le vif has been a familiar rule in our jurisprudence, being understood to imply the succession descends to legal heirs or heirs of the blood from the moment of death. Irregular heirs have only the right to be put in possession of the succession by an order of court. Equally well established is the principle that where there is a universal legatee and no forced heirs, the universal legatee is then seized of right of the effects of the succession. Article 1609 of the LSA-Civil Code. See 15 Tulane Law Review, pages 577, 580, 581 and authorities reflected therein. Prior to Act 408 of 1938, amending Article 915 of the LSA-Civil Code, the status of the surviving spouse was that of an irregular heir, and as such not seized immediately of right to the effects of the succession.
It is argued that the record is silent as to the origin or the title of possession of Mrs. Hattie Clark Hill and that no evidence has been presented concerning the divestiture of title by William Clark. And further, it is said, the court has no right to indulge in the presumption that William Clark or Hattie Clark Hill did not leave forced heirs. Predicated on these premises it is contended the provisions of Article 1607 and not those of 1609 should govern in this case. Article 1607 reads:
“When, at the decease of the testator, there are heirs to whom a certain proportion of the property is reserved by law, these heirs are seized of right, by his death, of all the effects of the succession, and the universal legatee is bound to demand of them the delivery of the effects included in the testament.”
It follows, should we apply Article 1607, that there would have been an interval of time between the death of Mrs. Hill and the moment her husband, the universal legatee, succeeded to the effects of the estate. The judgment recognizing Hill as the universal legatee of his wife bequeathed to him all of the property possessed by her. This judgment has not been attacked by forced heirs since 1925. There is no evidence of their existence then or now. There follows certainly a strong presumption that there were no forced heirs or such an attack would have been made. We do not think it was incumbent upon Hill to produce evidence to show the absence of forced heirs of his wife or Clark. Such proof is negative and Hill is entitled to rely on the presumptions which flow from the judgment. We feel justified, therefore, in concluding there were no forced heirs to controvert the title and possession of the defendant predicated on his acquisition of the subject property as universal legatee. 'Certainly, if legal heirs were in existence *296 and known to be such, plaintiff.should have produced' them.
Hill’s claim to seizen of the property of his wife by virtue of being her universal legatee and there being no forced heirs is affected by Article 1609 of the Code. In the Succession of Stevens, 1915, 137 La. 613, 69 So. 26, 27, the court said:
“ ‘Our Code leaves no room whatever for doubt or surmise as to the fact of the property of a deceased person being transmitted directly and immediately to the legal heir, or, in the absence of forced heirs, to the universal legatee, without any intermediate stage when it would be vested in the succession representative, or in the legal abstract called “succession.” The law on that point is so explicitly stated in the Code, and has been so frequently applied, that nothing more is needed here than to give the numbers of the articles of the Code bearing upon the point, and the pages of the Reports where a few of the very numerous decisions are to be found: Articles 940-947, 1609, 1611, and 1671; Womack v. Womack, 2 La.Ann. [339] 341; Frazier v. Hills, 5 La.Ann. [113] 114; Addison v. [New Orleans Sav.] Bank, 15 La. [527] 529; Succession of Dupuy, 4 La.Ann. [570] 571; Burbridge v. Chinn, 34 La.Ann. 681.’ ”
We find as a result of the application of Article 1609 of the LSA-Civil Code there was privity between the estates of Mr. and Mrs. Hill and their possessions were susceptible of being tacked on or joined to total thirty years of acquisitive prescription.
Since we have concluded the character of the possession of Hill over the land in dispute as determined by the Supreme Court in Hill v. Richey is' not different from that exercised by him and his wife during the more than thirty years preceding the controversy between the parties herein, it follows that the defendant has fulfilled the essentials of the prescription of thirty years as prescribed by Articles 3499 through 3505 of the LSA-Civil Code.
For the foregoing reasons the judgment from which appealed should be and is hereby reversed and set aside and it is now ordered, adjudged and decreed that there be judgment in favor of Robert Lee Hill and against William O. Richey, sustaining the plea of prescription of thirty years; and Robert Lee Hill is hereby decreed to be the owner of the following described property :
“A certain piece, parcel or tract of land * *■ * being, lying and situated in Sections 25 and 38, T5N, R4W, Rapides Parish, Louisiana, being more particularly described as follows: commence at a point on the western boundary of Section 25, which point is north of the southwest corner of Section 25, as shown on a plat of survey by Howard L. L’Heureux, dated October 5, 1949, marked ‘Plaintiff 2’ in Civil Suit 36,372 on the Docket of the Ninth Judicial District Court, Rapides Parish, Louisiana, and from said point run South 83° East a distance of 26.60 chains to establish the point of beginning of the property herein described; from said point of beginning run North 37° 30’ East a distance of 38.90 chains; thence run North 12° 45' East a distance of 49.60 chains; thence run South 1° 46' East a distance of 15.03 chains; thence run South 6° 13' East a distance of 8.41 chains; thence run South 6° West a distance of 7.17 chains; thence ran South 3° 54' West a distance of 23.08 chains; thence run South 30° 50' West a distance of 9.38 chains; thence run South 13° 29' West a distance of 21 chains; thence run North 83° West a distance of 24.56 chains to the point of beginning, and being all of the property between the red and yellow lines on the here-inabove described plat of survey.”
It is 'further ordered, adjudged, and decreed that plaintiff’s demands be and the same are hereby dismissed, plaintiff to pay all costs of this suit, including costs of appeal.