HARDY, Judge.
Plaintiff instituted this suit praying for the judicial determination of the boundary between his property and that of the defendants. A survey was ordered and made, but, upon joint application of counsel for plaintiff and defendants, this survey was set aside and the court appointed another surveyor. Following the filing of procés verbal and plat of survey, made pursuant to this order of the court, the defendants filed an amended answer in lieu of their original pleading. After trial on the merits judgment was rendered in favor of defendants, from which plaintiff has appealed.
The dispute involves the ownership of property located in the SW 14 of Section 7, Township 20 North, Range 2 West, Lincoln-Parish, Louisiana. Plaintiff, R. F. Roberson, claims the ownership of the entire S 14 of the quarter section, with the exception of a ten acre strip off the extreme west side thereof, which excepted tract is not here-involved. The defendant, M. S. Green, claims the ownership of the NW 14 of the SW 14 °f said Section 7, together with a tract south of the line of said described' tract, which extends into the SW 14 of SW 14. Defendants, Jessie W. Bettell and wife, claim the ownership of the NE 14 of the SW 14 and a tract of land south thereof extending into the SE J4 of the SW }4 which is claimed by the plaintiff.
The tracts claimed by the defendants-which encroach upon the S 14 of the SW J4 are enclosed by a continuous barbed wire fence. This fence begins at a point 21 feet south of the -Northeast corner of the SE 14. of SW 14, runs southwest at a nine degree angle for a distance of 935.5 feet, thence at a sightly increased southerly angle to the-dividing line between the SE and SW 54’s. of the SW }4 ; thence in an irregular course-which finally meanders northerly to a point on the east and west center line of .the SW 14- The fence is shown on the plat prepared, under date of January 5, 1953, by C. H. Edwards, Jr., the court appointed surveyor, several copies of which were filed in evidence in this case.
The property in dispute involves the area between the fence line and the east and west center line of the SW 14- No estimate o£ *441 the exact area involved appears in the record. From rough calculations which we have made, and for the accuracy of which we do not vouch, it would appear that slightly less than two acres in the SE 54 of the SW }4: and slightly more than two acres in the SW ,54 of the SW 54> are here concerned.
All parties to this suit acquired title by duly executed and recorded deeds of conveyance which described the-property conveyed by government subdivisions. Numerous deeds representing the chains of title of the respective parties were admitted in evidence, and we set forth below the de-raignment of title of the several parties to this litigation, as reflected by these instruments :

I.Record title of plaintiff, R. F. Rob- ■ erson.

1. Plaintiff, R. F. Roberson, acquired title to the S 54 of SW 54> Section 7, less 10 acres off of the west side of the SW 14 of SW 14 of Section 7, by deed of conveyance from C. A. Green dated March 5, 1940.
2. C. A. Green acquired title to the property described on December 12, 1910, by deed from M. R. (Mack) Green and wife, Mrs. M. J. Green.
3. The only other instrument which was filed in evidence affecting any part of the S 54 of the SW 54 of Section 7 is a deed of conveyance from Mack R. Green to Jesse J. Booles, dated February 2, 1891, and conveying the SE 54 of SW 54 of Section 7.

II.Record title of defendant, M. S, Green.

1. M. S. Green acquired title to the NW 14 of the SW J4 of Section 7, less 2 acres in the southeast corner thereof, from the heirs of Y. C. Green, by act of conveyance dated September 15, 1916.
2. Y. C. Green acquired title to this tract from Jesse J. Booles by instrument dated February 1, 1894.

III.Record title of defendants, Jessie W. ■Bettell and wife.

1. By act of conveyance dated June 14, -1944, Mrs. Tressie Elizabeth Bonds, joined by her husband, Tom J. Bonds, sold to Mrs. Jessie W. Bettell, wife of Jessie W. Bettell, the NE 14 of the SW 14 of Section 7 and a two-acre tract in the southeast corner of. the NW 14 of the SW -j4 of Section 7, described as being 140 yards east and west by 70 yards north and south.
2. The above described property had been acquired by Mrs. Tressie Elizabeth Bonds, nee McCuller, by deed from W. D. McCuller, dated July 28, 1932.
3. McCuller acquired deed to the property described from. Dr. R. N. Featherstone on October 8, 1923.
4. Featherstone had received title, to the property by deed dated December 27, 1918, from John Green.
5. John Green received title by conveyance from the heirs of S. (Sanford) M. and Maggie Wooten dated November 13, 1916.
6. Sanford M. Wooten had acquired the property from Jesse L. Booles by deed dated January 5, 1893.
(Note: The above are the major conveyances of the property which is involved in this suit. We exclude, because of immateriality, a deed by the tu-trix of the minors of one of the Wooten heirs, which was evidently curative in nature. We also exclude the origin of the separation of the two-acre tract in the southeast corner of the NW )4 of the SW 54 which was shown to have been sold by M. S. Green to Dr. R. N. Featherstone on January 23, 1919, and which was included in the conveyance 'from Featherstone to McCuller and thence to the Bettell defendants, as above noted.)
*442 Briefly stating the opposed contentions of the parties; plaintiff claims record title to the entire S of the SW }4 of Section 7, less the west ten acres thereof; defendants claim record title, as above delineated, to the NE 14 and the NW °f SW 1/4 of Section 7, and additionally claim the tracts south of these quarters between the south line thereof and the fence which is located still farther south, and, as above observed, encroaches upon the property claimed by plaintiff.
The basis of plaintiff’s claim is his record title by description according to government-located subdivision. As an element of his claim plaintiff alleged the absence of any established boundary between his property and that of defendants.
' In their amended answer, which was substituted in lieu of their original pleading, . the defendants admitted the conveyance to plaintiff by C. A. Green of the S 1/2 of the SW 14 of Section 7, less west ten acres thereof, but deny plaintiff’s ownership of any part of said tract north of the fence located in the S V2 of the SW }4 of Section 7. Defendants further admitted that the boundary between the properties had never been judicially established, but affirmatively alleged the establishment of a boundary by consent. This allegation, which we deem to be of material importance in consideration of the issues presented, is set forth in defendant’s answer in the following words:
“Still further answering said Article, defendants allege that the boundary between the estate of plaintiff on the South and the estates of defendants on the North was fixed by consent and agreement of the owners of the respective estates more than 70 years ago, such boundary being the fence shown in South Half of Southwest Quarter (S of SW 14) of Section 7, Township 20 North, Range 2 West, Lincoln Parish, Louisiana, on the survey made ’ by C. H. Edwards, Jr., on January 5, 1953; that said fence was constructed and established as the boundary between said estates more than 70 years ago, that said fence has not been moved, has always been accepted by the owners of plaintiff’s estate and defendants’ estates until the last five or six years, at which time plaintiff started claiming that said fence shown on the survey made by C. H. Edwards, Jr., on January 5,1953, was not the correct boundary between said estates, which claim is denied by defendants.”
Alternatively, defendants averred ownership by possession of the disputed tracts for a period of more than 30 years, specifically pleading prescription acquirendi causa. This alternative plea is set forth in defendants’ answer as follows:
“In the alternative and in the event the Court shall find that the fence located in South Half of Southwest Quarter (S Y2 of SW 14) of Section 7, Township 20 North, Range 2 West, Lincoln Parish, Louisiana, as shown on the survey made by C. Ii. Edwards, Jr., has not heretofore been established and accepted as the boundary between the estates of defendants on the North and the estate of plaintiff on the South, then defendants show that they are the owners by reason of the possession hereinafter detailed of all of the South Half of Southwest Quarter (S of SW 54) of Section 7, Township 20 North, Range 2 West, Lincoln Parish, Louisiana, lying North of the fence shown on the survey made by C. H. Edwards, Jr., on January 5, 1953, defendants owning such tract of land by reason of defendants and their authors and predecessors in title, viz., J. J. Booles, S. M. Wooten, the heirs of S. M. Wooten and Kis deceased wife, John Green, R. N. Featherstone, W. D. McCuller, Mrs. Tressie Elizabeth Bonds, Y. C. Green and the heirs of Y. C. Green and his deceased wife, having been *443 and now being,' in the actual, physical, open, notorious, uninterrupted, peaceable and undisturbed possession of said tract of land for a period of more than 30 years preceding the filing of this suit, which possession and prescription acquirendi causa of 30 years is specially and expressly pleaded herein by defendants, such possession consisting, among other things, of selling, cutting and removing timber, from said land, cultivation of said land, using the same as a pasture, and keeping and maintaining a fence around such land.”
Upon the basis of the above stated contentions defendants prayed that the fence located in the S Y2 of the SW 14 °f Section 7, as shown on the plat of survey made by C. H. Edwards, Jr., be recognized as the boundary between the estate of plaintiff south of said fence and the estates of said defendants north of said fence, and, alternatively, if the said fence should not be recognized by the court as the boundary between the respective estates, that their plea of prescription of 30 years acquirendi causa be sustained and that defendants be recognized as the owners of the tracts north of the fence.
In his written opinion the district judge expressed certain findings of fact, particularly that
“ * * * a fence has been in existence and acknowledged and acquiesced in as the boundary between the estates for more than 30 years, but the court finds no authority and none has been cited which holds that this fact alone has the legal effect of fixing that fence as the legal boundary line.”
However, our learned brother of the district court accepted the establishment and maintenance of the fence for a period of more than 30 years, and its acknowledgment as a boundary, as evidence that defendants and their predecessors in title had claimed all property to the fence line as owners and fixed the limits of the actual possession exercised by them up to the said fence line. As a consequence of this finding the court sustained defendants’ plea of prescription acquirendi causa under the provisions of Article 852 of the LSA-Civil Code and on the authority of Opdenwyer v. Brown, 155 La. 617, 99 So. 482, authorizing the tacking of possession in establishing the requisite prescriptive period.
Before this court counsel for plaintiff urgently contends that the lower court erred in predicating its judgment upon the prescription provided under LSA-Civil Code Article 852 inasmuch as the defendants did not plead the benefit of this article. Counsel argues that defendants’ plea of prescription, which was expressly couched in the alternative, must be considered as being governed by ■ Articles 3499 through 3505 of the LSA-Civil Code, and is not to be affected by the provision which is considered under Article 852.
Conversely, distinguished counsel for defendants contends that the answer of defendant had the effect of pleading the possession of 30 years under Article 852.
The importance of these opposed contentions is readily to be perceived because of the fact that the Bettell defendants acquired title in 1944 and therefore must depend upon tacking on the possession of their predecessors in title for the establishment of 30 years possession.
Before proceeding to a consideration of this and other legal propositions, we think it desirable, to set forth briefly the facts which we consider have been established by the record.
There is no question as to the existence of the wire fence substantially in the same location which it was found to occupy at the time of the Edwards survey on January 5, 1953, for a period of more than 30 years preceding the institution of this suit. It is true that the exact line of the fence was subjected to some changes, particularly in wooded areas where repairs were effected *444 by moving the wire to nearby trees. However, we regard these changes as being unsubstantial in nature. We think it was further established, as best as can be determined from the testimony, this wire fence was first erected sometime in or about the year 1908 and was designed to replace the line of an old rail fence which had completely rotted down. The evidence does not show the time at which the rail fence was first built but there is evidence which indicates that it was in existence at the time the record title to the NE 54 °f the SW % was acquired by Sanford M. Wooten in 1893.
Despite the testimony as to the existence of the wire fence and the preceding existence of a rail fence for a period of some 60 years, more or less, prior to the institution of this suit, we think the record completely fails to establish the fact that this fence was erected and maintained by the parties with the intention of fixing the boundary between their respective estates. There was a considerable amount of testimony by witnesses for defendants which was designed to establish this fact, but we think the testimony failed in its purpose. It was shown that the fence was generally reputed to mark the boundary; that it was maintained at different times by one or more of the owners of the adjoining estates, but there is not the slightest direct evidence that it was ever intended as a boundary by the parties concerned. We think the course of the fence itself constitutes mute evidence against this contention. As we have above pointed out, the record titles of all the parties to this litigation and their predecessors in title describe the properties by government subdivisions. It is unreasonable to believe that any of the owners could have considered the angling and meandering course of the fence to have marked a line that should run due east and west. Of further significance in this connection is the consideration that the owners of these properties, for generations, have been friends and neighbors and relatives by blood or marriage. It is conclusively established, and conceded by all parties, that there has never been any particular need for a delineation of boundaries, and there has never been any objection to the occupancy and use of encroaching areas until the dispute as to the exact boundary developed and came to a head between the parties to this litigation, a comparatively short time preceding the filing of this suit.
There is no question as to the fact that the owners of the NE 54 of SW J4> which is now owned by the Bettell defendants, at times have cultivated a small area of perhaps one acre, more or less, between the south line of their record title and the fence. It is also established that these defendants and their predecessors in title used some outbuildings which, as shown by the survey, were located in the SW 54 of the SW J4 in the disputed area which is claimed in this suit by the defendant, Green.
With respect to the asserted possession of a part of the disputed area by the defendant, M. S. Green, it is shown that at one time a very small tract in the extreme northwest corner of the disputed area was cultivated, and that, at other times, there has been some cutting of timber in the wooded area lying immediately south of the Green property, which is the NW J4 °f the SW 54 of Section 7.
Careful examination of the record has not convinced us that the possession by the defendants, the Bettells and Green, or their predecessors in title, has been in the nature of possession as owners. Rather, we are convinced that the acts of possession, limited to small areas, were inconsequential and have been of the nature which has been designated as possession by use and occupancy. Before leaving our analysis of the facts, we think it is important to note that the evidence of possession by M. S. Green of the disputed area lying within the SW 54 of the SW 54 has not been, in any sense, of such nature, character or degree as would support the plea of prescription acquirendi causa. In this connection it is pertinent to call attention to the *445 fact that this defendant did not appear as a witness in his own behalf, and was called on cross-examination by plaintiff in rebuttal. There is nothing in his own testimony which would tend to establish his possession of any part of the disputed area.
We proceed to a consideration of the principles of law which are involved in view of the affirmative defenses which have been raised against plaintiff’s action. Counsel for defendants states his first proposition as follows:
“If the parties to the litigation, or their predecessors in title, have acquiesced in and acknowledged the fence shown on the survey made by C. H. Edwards, Jr., as the boundary between the estates of defendants on the north and the estate of plaintiff on the south, then that fence must remain as the boundary between the estates of defendants and the estate of plaintiff.”
After analyzing the testimony, pro and con, bearing upon this point, counsel submits the conclusion that the presently existing barbed wire fence,, as shown by the Edwards survey, has been accepted as the boundary between the respective estates of plaintiff and defendants. However, counsel qualifies this conclusion by an admission of the impossibility of proving any
“specific, express and mutual agreement to the effect that the fence * * * has been agreed on by defendants or their predecessors in title or by plaintiff or his predecessors in title a9 the boundary * *
It is obvious that this same argument was presented to the district court, and in his opinion the learned judge correctly observed :
“Here we find that a fence has been in existence and acknowledged and acquiesced in as the boundary between the .estates for more than 30 years, but the court finds no authority and none has been cited which holds that this fact alone has the legal effect of fixing that «fence as the legal boundary line.”
This point was specifically covered under findings of facts which were quite similar to those involved in the instant case in the opinion of this court in Hester v. Smith, 72 So.2d 549, 551, in which we stated:
“The testimony in the record is not so much significant by reason of the facts established as for the failure to establish the one essential, namely that the 1902 fence was agreed upon, accepted as and intended, to represent the boundary between the Hester and Smith estates. Careful and repeated examination of the testimony which may be regarded as bearing upon this point only serves to emphasize this failure. It is quite true that a number of the witnesses consistently referred to the 1902 fence as the boundary; that the widow of W. P. Smith who had lived on the Smith property from 1893 to 1943, a period of fifty years, testified that Smith and Hester built a wire fence about or between 1900 and 1902 between their properties, but we find not the .slightest direct and positive evidence that this 1902 fence was intended by Walter S. Hester and W. P. Smith to mark the boundary between their estates.”
The facts in the case which is now before us are lacking in even greater degree than those under consideration in the Hester case. There is not the slightest evidence as to when the rail fence was built, nor by whom, nor for what purpose, nor is there any testimony as to the intention of the then owners of the adjacent estates with reference to the erection of the barbed wire fence in or about the year 1908.
As hás been many times stated, the intention of the parties is an essential requirement, and, failing the clear-cut and convincing establishment of such an-intention, fences or other monuments or markers cannot be considered as determining and *446 fixing the boundaries between adjoining estates. Beene v. Pardue, La.App., 79 So.2d 356 (certiorari denied); Hester v. Smith, supra; Sharpless v. Adkins, La.App., 22 So.2d 692; Dufrene v. Bernstein, 190 La. 66, 181 So. 859; Meyer v. Comegys, 147 La. 851, 86 So. 307; Administrators of Tulane Educational Fund v. Stair, 148 La. 11, 86 So. 595.
Counsel for defendants, in brief before this court, further urges that defendants and their predecessors in title have possessed the property north of the fence for a period of 30 years and are accordingly entitled
“under the provisions of Article 852 of the Louisiana Civil Code of 1870, to retain as their property all land north of the fence shown on the Edwards survey.”
Reference to the details of defendants’ pleading in their answer, which has been quoted early in this opinion, destroys the validity of counsel’s argument that the plea of prescription was predicated on Article 852 of the LSA-Civil Code. It is true that this view was accepted by the district judge, but we think this was error. The alternative defense of prescription clearly indicates by its very wording that defendants and their predecessors in title have been
“ * * * in the actual, physical, open, notorious, uninterrupted, peaceable and undisturbed possession of said tract of land for a period of more than 30 years preceding the filing of this suit, which possession and prescription acquirendi causa of 30 years is specially and expressly pleaded herein by defendants * *
which is the customary, usual and accepted method of pleading 30 years prescription acquirendi causa under LSA-Civil Code Article 3499 et seq.
Nevertheless, even if we concede, for the purpose of argument, that defendants’ plea of prescription was intended to be asserted under Article' 852, we think the proof falls short of justifying the conclusion advanced. Again referring to the case of Hester v. Smith, cited supra, we quote as follows:
“Proceeding to a discussion of the plea of prescription, under the provisions of Article ,852 of the LSA-Civil Code, we are again moved to the con-elusion .that defendants have failed to establish that character and nature of possession which are implicit requirements for application of the prescriptive right. The testimony on this point is completely lacking in that' certainty which is essential. It appears that at times a part of the Smith tract up to a fence line east of the ideal boundary zvas cultivated; that at times a part was used as pasturage, but there is no real and definite evidence that there was any consistently maintained adverse possession. Rather we think the possession exercised was of that nature which is best designated as a possession for use or occupancy. The clearest and most direct statement of this principle is found in Williams v. Bernstein, 51 La.Ann. 115, 25 So. 411, 415:
“ ‘The• mere fact that parties owning adjoining property have cultivated lands up to a certain line, or up to a certain fence, built either by one or both, or built by one and repaired by the other, does not per se evidence an adverse possession' up to the line or fence, or an acquiescence in or recognition of an adverse ownership. Neighbors constantly run up fences within or beyond the boundary lines, and join their fences; doing so with the knowledge and understanding that such acts are merely temporary, and done subsidiarily to, and with reference to, the right of both'to ultimately ascertain and fix rights by an action of boundary, or through a formal,’ legal survey. Until this happens, the lands held by each are in the occupancy, and not in the' adverse^ possession, of ei *447 ther,—certainly so in the absence of a clear and direct claim advanced of adverse ownership and possession.’ ” (Emphasis supplied.)
Thus, it must be 'concluded, even if we accept the plea of prescription as being urged under the provisions of Article 852, that the necessary essentials of possession of the type required have not been established. This conclusion would affect and bind all defendants.
If we consider the plea of prescription of 30 year.s acquirendi causa as being governed by the provisions of LSA-Civil Code Article 3499 et seq., it is necessary that we separately consider the claims of the two sets of defendants. The Bettell defendants, having acquired title to their property in 1944, must, of necessity, be permitted to tack on the possession of their predecessors in title in order to make up a continuous period in excess of 30 years. This tacking of possession is permissible only where there is a privity of estate or contract between the occupants. In the absence of such privity the several acts of adverse possession exercised by the Bettells and their predecessors in title can be construed only as a series of trespasses. Upon determination of each of these acts the possession returns, by operation of law, to the record owner of the property. Richey v. Hill, La.App., 84 So.2d 291; Coats v. Lee, La.App., 70 So.2d 229; Beam v. Dudding, La.App., 43 So.2d.73; Buckley v. Catlett, 203. La. 54, 13 So.2d 384; Sibley v. Pierson, 125 La. 478, 51 So. 502; Harang v. Golden Ranch Land & Drainage Co., 143 La. 982, 79 So. 768; Emmer v. Rector, 175 La. 82, 143 So. 11.
There was no privity of estate nor of contract between the Bettells and their predecessors in title inasmuch as the deeds of conveyance, under which each of them held title, specifically described the property conveyed and did not include a description of any portion of the disputed tract. It follows that for the purpose of maintaining the plea of the prescription of 30 years acquirendi causa the possession of these defendants’ predecessors in title cannot be tacked in order to fulfill the required period, and, accordingly, the defense must fail.
The above discussed element does not enter into a consideration of the same plea advanced by the other defendant, M. S. Green, inasmuch as he acquired title in 1916, well more than 30 years prior to the institution of this suit. .However, the plea of prescription by this defendant must 'fail, in any event, since under our evaluation of the facts he has not established any substantial and continuing acts of possession of the disputed area or any part thereof. We again refer to the fact that this defendant failed to testify in his own behalf and, though called on cross-examination by plaintiff, he failed to give testimony in any particular bearing upon his asserted possession of the disputed property.
For the reasons assigned the judgment appealed from is annulled, avoided, and reversed and there is now judgment in favor of plaintiff, R. -F. Roberson, fixing the boundary between his estate in the S 54 of the SW 54 of Section 7, and the estates of Mr. and Mrs. Jessie W. Bettell and M. S. Green in the N 54 of the SW 14 of .Section 7, all in Township 20 North, Range 2 West, Lincoln Parish, Louisiana, as the cast-west center line of the SW 54 of Section 7, as set forth in the plat of survey of C. H. Edwards, Jr., Civil Engineer, dated January 5, 1953. There is further judgment rejecting defendants’ claims to any of the area between said established line on the north and the fence line, shown on the plat referred to, on the south.
There is further judgment against the defendants, in solido, for all costs of both courts.