PROVO STY, J.
The Tulane University enjoins the revenue officers from proceeding to enforce the collection of state and city taxes assessed against the succession of A. C. Hutchinson, deceased. The ground of the injunction is that plaintiff is the universal legatee of the succession, and as such is owner of the property assessed, and that its property is exempt from taxation under the Constitution.
There is no dispute as to the facts. A. G, Hutchinson died in November, 1902, leaving *527 a will and no forced heirs. The will was probated in the same month, and the executors, who.by the will were given seisin of the estate, at once qualified and took possession. There were particular legacies of money, and also one of specific property. The plaintiff university was universal legatee. Owing to litigation the settlement of the succession was delayed, and the executors still had possession of the entire estate when the assessment of 1903 was made, and of the entire estate less the particular legacies when the •assessment of 1904 was made. The entire estate was assessed to the succession in 1903, and the entire estate less the particular legacies in 1904. For that part of the estate embraced in the legacy of specific property the taxes' have been paid; for the remainder of the estate the taxes are enjoined. There is no denial that the property of Tulane University is exempt from taxation under the Constitution.
The case resolves itself into the question of how far, at the time these assessments were made, the property of the succession belonged to Tulane. In so far as it did so belong it was exempt. On the part of defendant it is contended that at the time these assessments were made the entire estate was vested in the succession, and none of it in Tulane; on the part of plaintiff it is contended that all ok It was vested in Tulane subject to the charge of the particular legacies, which were nothing more than mere debts of the universal legatee. The lower court correctly held that the part represented by the particular legacies did not belong to the universal legatee, but that the remainder did, and rendered judgment accordingly, maintaining the assessment of 1903 up to the amount of the particular legacies $219,601.88, and annulling it for the remainder, and annulling in toto the assessment of 1904. But the court failed to allow the statutory damages of 10 per cent, attorney’s fees on that part of the taxes which was thus found to have been improperly enjoined. With an amendment on this last point, we shall affirm the judgment, recasting it, however, as a matter of greater convenience in statement.
Our Code leaves no room whatever for doubt or surmise as to the fact of the property of a deceased person being transmitted directly and immediately to the legal heir, or, in the absence of forced heirs, to the universal legatee, without any intermediate stage when it would be vested in the succession representative, or in the legal abstract called “succession.” The law on that point is so explicitly stated in the Code, and has been so frequently applied, that nothing more is needed here than to give the numbers of the articles of the Code bearing upon the point, and the pages of the Reports where a few of the very numerous decisions are to be found: Articles 940, 941, 942, 943, 944, 945, 946, 947,1609, 1611, and 1671; Womack v. Womack, 2 La. Ann. 341; Frazier v. Hills, 5 La. Ann. 114; Addison v. Bank, 15 La. 529; Succession of Dupuy, 4 La. Ann. 571; Burbridge v. Chinn, 34 La. Ann. 681. Therefore the property forming the subject-matter of the universal legacy became at once the property of Tulane, and as such exempt from taxation.
Not so with that part of the estate covered by the particular legacies. It became, in a sense, the property of the particular legatees, “from the day of the testator’s death.” Civ. Code, art. 1626. It stood in the hands of the executors to be delivered, not to Tulane, but to the particular legatees. Civ. Code, art. 1630. It had to be deducted from the estate before Tulane could take anything under the will. Civ. Code, art. 1634. Indeed, not only did the ownership not pass to Tulane, but even the possession did not. The will did not provide that it should; and the law expressly provided that in case the executors were divested of the seisin by the universal legatee there should be left in their *528 hands “a sum sufficient to pay the movable legacies.” Oiv. Code, art. 1671. Therefore this fund formed no part of the property of Tulane, and was not exempt from taxation.
The learned counsel for defendants contend that, pending the administration of the succession, the ownership of the property is vested in the succession; and in support of that contention they cite the cases of City v. Stewart’s Estate, 28 La. Ann. 180; State v. Brown, 32 La. Ann. 1020; Carter v. City, 33 La. Ann. 816; and Succession of Levy (La.) 39 South. 37, ante, p. 377.
If these decisions went counter to the doctrine expressed by the maxim, “Le mort saisit le vif,” whereby the ownership of the property is transmitted directly and immer diately from the testator to the heir, or to the universal legatee, as the case may be, they would be in the teeth of the Code, and would simply have to be brushed aside. Far from it, they are to the contrary effect. Thus, in the case cited from 32 La. Ann. 1020 (State v. Brown); the court expressly says:
“The maxim, ‘Le mort saisit le vif,’ is expressly embodied in our Civil Code, and excludes the interposition of any temporary and qualified ownership, such as that of administrators, be-, tween the deceased and his heirs. Civ. Code, art. 940 et seq.’
These decisions do not mean to hold, and do not hold, that the abstract being called “succession” is owner of the property in the sense of excluding, or affecting in the slightest degree, the ownership vested in the heir or in the universal legatee. When these decisions speak of the succession being owner, they mean, as a matter of course, that it is holding for the true owner, and merely for the purposes of administration. Nothing that is said in them is intended to detract in the slightest degree from the recognized ownership of the heir, or of the universal legatee, as the case may be, and from the substantial rights (such as that of exemption from taxation) flowing from such ownership. This is very clearly expressed in Cross on Successions, § 35, as follows:
"The seisin of the succession representative operates merely to protect his title as detainer of the property for the purpose of his administration; while the seisin of the heir, conflicting in no respect with the other, operates as the sign of his title as owner of the estate, subject to its liquidation under administration. The former has actual control of the eátate under the legal conditions prescribed; but it is the heir or universal legatee, as the case may be, who reaps all the proprietary advantages of possession, such as accretion, prescription, perception of fruits, etc. So, Toullier (IY, 582) says: ‘The seisin of the executor does not inter-fere with that of the heir of blood, or of the universal legatee, in the case where the latter has seisin. It is always the heir who has the veritable possession; he is alone seised as proprietor. The executor possesses only_ as depositary in the name of the heir, or universal legatee, who can put an end to the seisin by offering to turn over to the executor a sufficient amount to pay the movable legacies, or by giving security for their payment, and that, even when the testator had charged the executor to sell all his property.’ ”
The ease of Succession of Levy (La.) 39 South. 37,[1] was decided from considerations peculiar to an inheritance tax, and which can have no application in the instant case. This inheritance tax was held to be due notwithstanding that under the provisions of the Code the ownership of the property passed to the heirs. The maxim, “Le mort saisit le vif,” was expressly recognized. A iike recognition in the instant case would be decisive of the controversy, for the exemption extends (Const. 1898, art. 255; Act No. 43, p. 52, of 1884, § 5) to “all the property of Tulane University of Louisiana of whatsoever character.” And the recognized purpose of the exemption is that the patrimony of Tulane shall not be diminished — not even to the extent of one cent — by the payment of taxes.
Realizing, doubtless, the weakness of their position on the question of ownership, the learned counsel for defendant, in an addendum to their brief, fall back upon the question of possession. “The question of possession,” they say, “must determine the taxa *529 bility of the property of the succession,” and they propound the query:
“If, as the court declared in Bird v. Succession of Jones, 5 La. Ann. 645, the universal legatee not in possession could not plead prescription against a' creditor, how can a universal legatee not in possession claim exemption as against the state?”
The answer to that question is simply this: The Constitution does not require that the property should be in the actual possession of the University, but only that it should belong to the University. From the fact that the University was not in possession of the property the tax would not be any the less out of her pocket and the plain purpose of the Constitution frustrated. We fail to see that possession can cut any figure in the discussion.
The learned counsel for defendant say that, differently from the relations between citizens, which are governed by private law, the relations between the state and the citizen are governed by public law; and that the principles of this public law are not to be found in the Code, but in the common law. The sole question in this case is as to the transmission of this property from the deceased to those who are to take it under the will, and as to the tenure of the latter. Now, since the transmission and tenure of property in this state is unquestionably governed by the Civil Code, we fail to see what relevancy the distinction between private and public law can have, or what application the common law can have.
Finally, the learned counsel argue that the revenue law (section 1 of Act No. 170 of 1898, p. 346) levies a tax upon “all propperty held” by executors, and that this law is of later adoption than the Civil Code, and therefore controls those provisions of the Civil Code according to which the property would become vested in Tulane and escape taxation. But, obviously, the revenue law has reference to property in the hands of the succession representative liable to taxation. In the case of succession property, no more than in the case of any other kind of property, does it contemplate that property exempt from taxation shall be assessed' and taxed.
On the other hand, the learned counsel for Tulane University argues that the ownership and the seisin of the entire estate, including the amount required to pay the particular legacies, passed to the universal legatee under the maxim “Le mort saisit le vif”; that the particular legacies were but charges upon this ownership and seisin — mere debts of the universal legatee. As illustrative of the legal situation, the learned counsel supposes the ease of the universal legatee’s having, with the consent of the particular legatees, taken away the seisin from the executors without having left in the hands of the latter “a sum sufficient to pay the movable legacies,” as' required by article 1671, Civ. Code, as, it has been held, ¿light be done (Succession of Charmbury, 34 La. Ann. 26) ; and he asks whether in such a case the particular legacies would not be mere debts, and the entire estate exempt from taxation.
We answer, “Yes,” to these questions; but the reason is that by the consent of the parties in interest the legal situation would have been changed toto cáelo from what it would have been without such consent. Without this change brought about by consent, the legal situation would be as detailed hereinabove ; that is to say, the fund would not have passed into the hands of the universal legatee, and become merged in his estate, but would have remained in the hands of the executor, and nothing passed to the universal legatee except the universal legacy. True, under the maxim “Le mort saisit le vif,” the universal legatee becomes invested with the legal seisin from the moment of the death of the testator; but the taxability, vel non, of the property does not depend upon the seisin, but upon the ownership — upon the substantial rights of the parties. The seisin may very well be in the universal legatee and the *530 ownership in the particular legatee. Mar■eadé, in his commentary upon article 724, Code Napoleon,' explains this with his usual felicity of exposition:
“The seisin is not always accompanied by the ownership of the property. Thus, where the deceased leaves a legitimate child and also a natural child, the latter, without having the seisin, in other words, the possession, of any part of the property, is nevertheless owner of a part of the succession; so that, although the legitimate heir has the seisin, that is to say, the possession, of the entire succession, he has nevertheless the ownership only of a part. The same thing would happen if this legitimate heir found himself confronted by one or more legatees who took away from him a part of the succession; it would still be the heir who would be seised of the property, which would remain under his administration until the legatees should demand the delivery of the part coming to them. In fact, such a thing might be as that the heir thus having the seisin should be owner of no part of the estate, as where the entire succession was absorbed by particular legacies.”
Tulane, as residuary legatee, gets nothing until the particular legatees are satisfied integrally and the costs and charges of the succession are paid, so that, if any taxes are paid by the succession, they come out of Tulane’s portion, or, in effect, are páid by her. In that fact the learned counsel for the university would find the true test of the legal situation. It is she who pays the tax, ergo, it is her property that is being taxed. The answer is that the right, title, and interest of Tulane in the premises is measured by the will; and that under the will she gets nothing, is entitled to nothing, until these taxes have been paid; so that she does not pay them, but simply gets that much less. In dollars and cents it comes to the same thing, but in law the two situations are fundamentally different.
The learned counsel for the defendants contend that from the fact that part of the property assessed in 1903 was liable to taxation the consequence inevitably follows that the assessment of that year must stand for the whole, and cannot be reduced in this suit. The argument by which the contention is sought to be supported is short and clear, and may be quoted in full:
“The title to the amount represented by these legacies therefore never passed to the universal legatee; it remained in the personal representative of the decedent, to wit, his executors, until delivery thereof to the particular legatees. There was therefore some $200,000 representing the amount of these particular legacies in the hands of the executors between the 1st of January and the 1st of March, 1903, which was properly subject to taxation. If the board of assessors, unaware of the exact amount of such property liable to taxation, erroneously increased the amount of the assessment from the sum of $200,000 to a greater sum, thereby making the assessment larger than it should properly have been, it would have been perfectly competent for the executors of A. C. Hutchinson to bring suit at any time before the 1st of November of the year in which such assessment was levied, to reduce same. Having failed to make any attempt to reduce this assessment, and it having been conclusively shown above that the said estate did have property liable to taxation, the estate of A. O. Hutchinson would at any time after November 1, 1903, have been precluded from raising the question as to the correctness of the amount of said assessment. We do not understand how the plaintiff in the case can have any greater rights. The assessment was not levied against the Tulane University of Louisiana.”
The answer is that the demand in the suit is not one for reduction, but for exemption. The object of the suit is not to correct an error on the part of the assessors, but to have their action decreed to be null and void. For the same reason for which this assessment could be set aside if all the property were exempt, it can be set aside for that part of the property that was exempt.
It is ordered, adjudged, and decreed that the judgment appealed from be set aside for the purpose of amending and recasting, and that there now be judgment in favor of the Tulane University of Louisana and agdinst the city treasurer of the city of New Orleans, and the state tax collector of the Fourth district of the said city, annulling and ordering to be canceled the assessments of the property of the succession of A. C. Hutchinson, deceased, made for the years 1903 and 1904, except that for an amount of $219,601.88 the said assessment of 1903 is maintained; *531 perpetuating the injunction heretofore herein issued for all that part of the said assessments that are herein annulled and ordered to he canceled; condemning the defendants to pay the costs of the lower court, and plaintiff to pay the costs of this appeal, together with 10 per cent, as attorney’s fees on the aggregate amount of the taxes and penalties due and' payable upon that portion of the said assessment of 1903 that is herein maintained.
BREAUX, O. J., concurs in the decree. NICHOLLS, J., also concurs in the decree. MONROE, J., recused.

 Ante, p. 377.