**TOM MELTON v. STATE OF FLORIDA**

30 So. (2nd) 916                                   June Term, 1947
June 17, 1947                                            En Banc

*John O. Jackson,* for appellant.

*J. Tom Watson,* Attorney General, *Reeves Bowen,* Assistant Attorney General, and *Jesse F. Warren, Jr.,* special Assistant Attorney General, for appellee.

HOLT, Associate Justice:

Tom Melton, 30, was convicted of ravishing and carnally knowing, forcefully and against her will, a girl aged 16, and was sentenced to death in the electric chair.

On the night of June 27, 1946, the victim was seated in a car, about 10:30, in an isolated section of the City of Jacksonville, Duval County, Florida, with her companion. The couple had attended a motion picture show, after which they partook of a soft drink at a drive-in barbecue stand and thereafter parked at the place mentioned prior to returning home. This was their third date since her friend had been discharged from the service. They had known each other practically all of their lives.

While thus seated (they had arrived only a minute or so before), the appellant came up to the car, put his flashlight on them with one hand and brandished a pistol in the other, and ordered them to hold up their hands. He took $10.00 from the boy and $7.00 and some change from the girl, together with the car keys. He threatened to kill them if they made any outcry or attempted resistance. Appellant then ordered the girl to get into the back seat of the car and required her companion to lie down in the front seat, where the appellant examined him for presence of weapons. (All of this time he was holding the flashlight in one hand and the loaded gun in the other.)

Thereafter he ordered the girl back into the front seat and said: "I want to see how white folks does it." Both the boy and the girl protested and told appellant that, since he had their money, he should leave them, but, after several threats to kill, he required the girl to pull up her dress, take off her pants and elevate her right foot on the back of the front seat, place her left foot in the window of the door (which he had propped open), and ordered her friend to get on top of her. Although protesting vigorously, he proceeded to go through the motions of intercourse until appellant became dissatisfied and said: "You are not doing nothing." He then told the boy he would allow him five minutes more and, if he did not succeed in that time, "I'm going to get it for you." Both the girl and the boy testified that their private parts did not touch or connect and that he did not penetrate her in any wise.

Becoming disgusted with the performance of the boy, appellant ordered him out of the car, over into a ditch, with his back to the car, and told him he would kill him if he looked around at any time or made any attempt to show any form of resistance. Appellant thereupon ordered the girl to slip closer to him, and he testified that he put his arm under her back, to pull her closer, so that he could penetrate her, and he said (upon cross-examination): "I was running hot at the time, and I was going to try it." He then took out his handkerchief and blindfolded the girl, as he testified: "I didn't want her to see me." All of this time she was in fear of

appellant and obeyed his orders because she was afraid he would take her life. He kept the loaded pistol in his hand, which, coupled with his constant threats to kill, was sufficient to place fear in anyone.

Appellant then raped and had intercourse with her for about ten minutes, during which time she made several outcries and groans and grunts, which were heard by her friend, but he was unable to assist. She testified that the pain was excruciating, especially when he moved, and that she felt it all the way up into her stomach. After appellant had concluded, and she stood up, she felt liquid running down her legs, which later proved to be blood. Appellant took the handkerchief with which he had blindfolded her during the assault, wiped off all finger prints on the car and the handles of the doors. He then ordered her companion to drive the car away, and appellant stood (with his handkerchief covering part of his face) on the running board for a while, after which he got into the front seat of the car and rode several blocks with the pistol still in his hand.

After leaving the car, he again threatened the couple, saying that he had taken the license number of the automobile and that if a report were made, he knew where they lived and who they were and that he would kill them if any discovery were made of his acts. The boy immediately took her home, which was about six or seven blocks distant, arriving there around 11:30 at night, where, after gaining entrance, she immediately exclaimed to her mother: "A negro just raped me." Her mother laid her on the bed, wiped blood from her legs, which was flowing from her vagina, and, with the boy's father, took her to St. Luke's Hospital, in Jacksonville, where a complete medical and technical examination was made. This disclosed that the flow of blood was caused by a complete rupture of the hymen. The uncontradicted evidence of the examining physician was that she was a virgin before the assault by appellant; that she had in her vaginal parts live male sperm, which the physician testified had been inserted in her not more than two hours prior to the examination.

The testimony of appellant does not vary much from that

of prosecutrix. There is little conflict in the evidence, except that he denies the penetration. His contention, in brief, is that he came up to the car and told the occupants that, inasmuch as they were out for love and romance, he wanted to see "how the white folks does it" and he wanted to help them (especially the boy) accomplish their desires. He then robbed them of their money at the point of a loaded gun. After the unsuccessful performance of the boy (which the appellant instigated), he proceded to rape the girl at the point of a gun; that she protested and said: "I have just had an operation down there"; that, although he had his male organ out and in condition for insertion, her statement made him ashamed of himself and he withdrew and did not complete his contemplated act; that he did not see any blood on her in any respect and that the companion had told him previously that he could not do anything because they had just completed an act of intercourse. The overwhelming proof contradicts his unsupported statement. There is no question but that appellant raped her, and the jury, within its province, resolved this fact against appellant because of the abundance of credible testimony to such effect.

The only question posed for us to decide in this appeal is whether the so-called confession of the defendant to the officers was influenced by fear or hope.

At the outset the record discloses ample evidence upon which the jury could base its verdict without consideration of the confession. Whether the jury believed it or not does not make much difference. It is a slim thread indeed upon which to predicate an appeal.

After appellant was arrested he was positively identified in a police line-up on two different occasions, by both the victim and her companion, not only as to his face, but as to his clothes and general characteristics.

When he was taken to the scene of the crime, he was handcuffed by the officers and one of them said (calling him by his nickname): "Toby, I thought you had better sense than to go around here robbing and raping people," and the reply was, "I thought I did too."

Just as they were getting into the car to visit the scene, an officer said: "Toby, is there anything you want to tell us before we go?" The reply of appellant was: "Nothing except I'm guilty." There was no evidence of any threats, ill treatment or abuse, to elicit such an answer. Even appellant testified that no one touched him. He said he was afraid, however, and the officers frankly testified to this also. Of course he should have been afraid, since he had just committed a heinous crime, the penalty for which was well known to him; however, there is nothing to indicate that the officers incited any fear in him because of the possibility of ill treatment.

The only factor upon which the appellant places much emphasis on this appeal is the statement by the appellant (which was freely admitted by the officers) : "I know I am going to get the electric .chair, but for goodness sake don't you all beat me." They then proceeded to the place of the rape and theafter to the railroad trestle, from which the appellant had thrown the girl's pants. This article was located by the officers and later placed on evidence.

If any ill treatment had been visited upon appellant, he certainly would have testified to it, and this he failed to do. He admitted robbing, but denied the rape, although he freely stated in detail his intention and his attempt to do so. There is no question but that he penetrated his victim with his male organ. This is proven not only by the testimony of the victim but the corroborative testimony of her companion, who heard the outcries (and who knew of appellant's expressed intention) together with that of the attending physician and the medical technician, and also by that of the girl's mother, who was the first to care for her after the tragedy.

If there were the slightest possibility that the statements made by appellant to the officers as to his guilt had any effect whatsoever upon the jury, it certainly should have been removed and dispelled by the instructions given by the court on that particular phase, and which we quote:

"There has been permitted to go before you evidence tending to show certain admissions by or confessions of the defendant in this case, *but unless you find from the evidence that such alleged admissions or confessions were made and*

*were freely and voluntarily made by the defendant then such alleged admissions by or confessions of the defendant should be rejected by you and excluded from your consideration in arriving at your verdict in this case.* But if you find from the evidence that such alleged admissions or confessions of the defendant were made by the defendant and were freely and voluntarily made by him then such alleged admissions or confessions may be received and considered by you but should be received and considered with great caution. Especially should you receive and consider them with great caution if they were made after the defendant was incarcerated in jail or was under arrest. The jury is to determine the credence which should be attached to the alleged admission or confession and every part thereof. *It is the duty of the jury* to consider an alleged admission or confession as a whole and to give to such alleged admission or confession a fair and unprejudiced consideration; *to fairly and fully consider the time and all the circumstances of its making,* its harmony or inconsistency in itself or with other evidence in the case, *and the motives which may have operated on the party making it,* and to give effect to the whole or such part or parts thereof as the jury finds sufficient reason to credit and to reject from consideration the whole or such part or parts thereof as the jury finds sufficient reason to reject; but you should not give effect to any part or reject any part, arbitrarily or capriciously." (Emphasis supplied.)

See Hinson v. State, 62 Fla. 63, 56 So. 674; Bryant v. State, 89 Fla. 26, 103 So. 170; Driggers v. State, 90 Fla. 324, 105 So. 841; Thomas v. State, 96 Fla. 243, 118 So. 22; Rogers v. State, 108 Fla. 373, 146 So. 561; Goddard v. State, 143 Fla. 28, 196 So. 596; Dougherty v. State, 154 Fla. 308, 17 So. (2nd) 290.

Moreover, counsel for appellant did not object to the introduction of the evidence relating to his admissions, although he had full opportunity to do so. If error were committed by submitting this testimony to the jury, it was harmless and had nothing to do with influencing the verdict of the jury in any way.

And so we hold, on the only point presented to us for consideration, that: (1) The confession was not obtained by

duress, force, threats or fear, and is, therefore, admissible and could be considered by the jury; (2) that if the admission of such statements were erroneous (and objection to its intro- duction was not made), the remaining testimony as to the guilt of appellant (including his own) is so overwhelming that it would be harmless error, if any, and was not necessary for conviction; and (3) that the instruction of the circuit judge on this subject was sufficient to cure any alleged error in the possible consideration by the jury of such statement.

Appellant received a fair trial in every respect; he was treated with every possible care and consideration; he had able counsel; every opportunity to present his defenses to the charge was granted him. There was little conflict in the testimony as to the actual happenings that night, and this was determined by the jury (and properly so) against him and his tenuous defense.

Affirmed.

THOMAS, C. J., TERRELL, BUFORD, CHAPMAN, ADAMS and BARNS, JJ., concur.