SARTAIN, Judge.
The parties to this action are asserting rights to a tract of land and the improvements situated thereon known as Como Plantation which is located northwest of St. Francisville in West Feliciana Parish. Also at issue is the ownership of certain furniture and household items located in the plantation home. Prior to January 21, 1961, the property was owned by Mrs. Mary Brandon Wood. On that date, by an authentic act of donation, she gave the immovable property, excluding the contents of the house, to her granddaughter, Lacy Brandon Petersen. The latter thereafter married Gordon J. Christensen and she died on May 28, 1967, leaving no descendants. However, she had executed a valid will naming her father, Dudley E. Petersen, as universal legatee and executor.
Mrs. Mary Brandon Wood, now deceased,[1] originally appeared in these proceedings through her curator and claimed that the property reverted to her under the provisions of La.Civil Code Article 908, which reads as follows:
“Art. 908. Ascendants, to the exclusion of all others, inherit the immovables given by them to their children or their descendants of a more remote degree who died without posterity, when these objects are found in the succession.”
Mr. Petersen claimed that the property passed to him under the will. Mr. Petersen also alleged that he had contributed a substantial amount of money and personal services in repairing and maintaining the house and grounds and thus contended, alternatively, that he should be entitled to restitution therefor under any of the several legal or equitable theories, if Article 908 were held to apply. He also claimed that certain furniture and other items had been the subjects of donations inter vivos from Mrs. Wood to his deceased wife, Mary Lacy Wood Petersen, and to his daughter Lacy and therefore these movables also passed to him under the will. Certain other items, he claimed, were acquired by him or his wife and never belonged to Mrs. Wood, although they may *47 have been placed or kept at Como Plantation at one time or another.
The lower court ruled that the property did not revert to the donor, Mrs. Wood, because Civil Code Article 908 did not apply to testate successions in which the testament disposed of the donated property. Therefore, Mr. Petersen’s claim for restitution for expenses and services was dismissed as moot. The court also ruled that there was insufficient proof of any donation inter vivos of movables by Mrs. Wood but did not mention the claim for those items which Mr. Petersen alleged were acquired by him and never belonged to Mrs. Wood. Except as it pertains to the issue of movables, we affirm the judgment of the lower court.
The family relationships involved may be summarized thusly: One of the children of Mrs. Mary Brandon Wood’s marriage to James Wood (deceased) was Mary Lacy Wood. She had no children during her first marriage, which ended in divorce, and she then married Dudley E. Petersen. One child was born of this second marriage, Lacy Brandon Petersen, whose succession is involved herein. Mrs. Petersen had died before the donation of Como Plantation was made to her daughter.
As noted by the trial judge, the principal issue in this case is the applicability of Article 908 of the Civil Code to the testamentary succession. We find the following articles demonstrate how different sorts of successions are treated under the Civil Code:
“Art. 875. There are three sorts of succession [successions], to wit: Testamentary successions; Legal successions; and, Irregular successions.
“Art. 876. Testamentary succession is that which results from the institution of heir, contained in a testament executed in the form prescribed by law. This sort of succession is treated of under the title : Of donations inter vivos and mortis causa. (Title II of Book III of the Civil Code)
“Art. 877. Legal succession is that which the law has established in favor of the nearest relation of the deceased.
“Art. 878. Irregular succession is that which is established by law in favor of certain persons, or of the State in default of heirs either legal or instituted by testament.
These two last sorts of successions are the objects of the present title.” (Title I of Book III of the Civil Code)
Chapter 2 of Title I is entitled of Legal Successions and the first article in that Chapter is Article 886:
“Art. 886. If there is no testament or institution of heir, or if the institution is null or without effect, the succession is then open in favor of the legitimate heirs, by mere operation of the law.”
Article 908 is also found in the same Chapter and it could easily be concluded based on the structure of the Civil Code alone that it is not applicable to testamentary successions. However, the trial judge resolved this issue by finding that the requirements of Article 908 were not completely satisfied, in that the donated object was not “found in the succession”. In this regard we quote the following excerpts from the written reasons for judgment:
“At the outset it is obvious that under Article 908 of the Louisiana Civil Code every requirement set forth must be present at the death of the decedent donee before the reversion can take place in favor of the ascendant donor. These requirements are first, that the donee died without posterity, which is admitted in this case, and second, that the objects donated are found in the succession.
“In the instant case the donee died without posterity, and it is the opinion of this Court that the objects are not found in the succession.
*48 “An examination of Article 1626 of the Civil Code of Louisiana and the case of Tulane University v. Board of Assessors, 115 La. 1025, 40 So. 445, leaves no doubt in the Court’s mind that the donated property (Como Plantation) was not found in the succession.
“I quote herein excerpts from the plaintiff’s brief which are germaine thereto and which are adopted by the Court for the purposes of this opinion:
‘We found ample authority for this concept in the Louisiana jurisprudence, particularly in the case of Tulane University vs. Board of Assessors, 115 La. 1025, 40 So. 445. In this case the Board of Assessors had assessed State and City taxes against the “Succession of H. C. Hutchinson, deceased.” Mr. Hutchinson had designated Tulane University as his univeral Legatee. The settlement of the succession was delayed and the Executor still had possession of the entire Estate when the assessment was made. Since Tulane University was exempt from taxation, the question was whether or not the property which was the subject of the universal legacy should be taxed in the “Succession of A. C. Hutchinson”, or whether the property devolved on the death of the decedent to the universal legatee, Tulane University, and therefore was exempt from taxation. The defendant contended that:
“ * * * at the time these assessments were made, the entire estate was vested in the succession, and none of it in Tulane; on the part of the plaintiff it is contended that all of it was vested in Tulane, subject to' the charge of the particular legacies, which were nothing more than mere debts to the universal legatee.” (emphasis supplied.)
‘The Court, with the Honorable Justice Provosty as its organ, decided that the property was not vested in “the succession”, but rather vested in Tulane University immediately upon the death of the testator. The following quotation from page 1028 [40 So. 445] is pertinent here:
“Our Code leaves no room whatever for doubt or surmise as to the fact of the property of a deceased person being transmitted directly and immediately to the legal heir, or, in the absence of forced heirs, to the universal legatee, without any intermediate stage when it would he vested in the succession representative, or in the legal abstract called ‘succession’. The law on that point is so explicitly stated in the Code, and has been so frequently applied, that nothing more is needed here than to give the numbers of the articles of the Code bearing upon the point, and the pages of the Reports where a few of the very numerous decisions are to be found: Articles 940, 941, 942, 943, 944, 945, 946, 947, 1609, 1611, and 1671; Womack v. Womack, 2 La.Ann. [339] 341; Frazier v. Hills, 5 La.Ann. [113] 114; Addison v. Bank, 15 La. [527] 529; Succession of Dupuy, 4 La.Ann. [570] 571; Burbridge v. Chinn, 34 La.Ann. 681. Therefore the property forming the subject-matter of the universal legacy became at once the property of Tulane, and as such exempt from taxation.
“Not so with that part of the estate covered by the particular legacies. It became, in a sense, the property of the particular legatees, ‘from the day of the testator’s death.’ Civ.Code, art. 1626. It stood in the hands of the executors to be delivered, not to Tulane, but to the particular legatees. Civ.Code, art. 1630. It had to be deducted from the estate before Tulane could take anything under the will. Civ.Code, art. 1634. Indeed, not only did the ownership not pass to Tulane, but even the possession did not. The will did not provide that it should; and the law expressly provided that in case the universal legatee there should be left in their hands ‘a sum sufficient to pay the movable legacies.’ Civ.Code, art. 1671. Therefore this fund formed no part of the property of Tulane, and was not exempt from taxation.
“The learned counsel for defendants contend that, pending the administration of *49 the succession, the ownership of the property is vested in the succession; and in support of that contention they cite the cases of City [of New Orleans] v. Stewart’s Estate, 28 La.Ann. 180; State v. Brown, 32 La.Ann. 1020; Carter v. City, 33 La.Ann. 816; and Succession of Levy (La.) [115 La. 377] 39 South, 37, ante, p. 377.
“If these decisions went counter to the doctrine expressed by the maxim, ‘Le mort saisit le vif,’ whereby the ownership of the property is transmitted directly and immediately from the testator to the heir, or to the universal legatee, as the case may be, they would be in the teeth of the Code, and would simply have to be brushed aside. Far from it, they are to the contrary effect. Thus, in the case cited from 32 La.Ann. 1020 (State v. Brown), the court expressly says:
‘The maxim, “Le mort saisit le vif,” is expressly embodied in our Civil Code, and excludes the interposition of any temporary and qualified ownership, such as that of administrators, between the deceased and his heirs. Civ.Code, art. 940, et seq.’
“These decisions do not mean to hold and do not hold, that the abstract being called ‘succession’ is owner of the property in the sense of excluding, or affecting in the slightest degree, the ownership vested in the heir or in the universal legatee. When these decisions speak of the succession being owner, they mean, as a matter of course, that it is holding for the true owner, and merely for the purposes of administration. Nothing that is said in them is intended to detract in the slightest degree from the recognized ownership of the heir, or of the universal legatee, as the case may be, and from the substantial rights (such as that of exemption from taxation) flowing from such ownership.” Cf. Fortson v. Lake, Inc., 176 So.2d 703, La.App. (1965).’ ”
Although Article 1626 provides for the rights of the particular legatee, and the instant case involves a universal legatee, Article 1609 is the corresponding provision and expresses the same principle that immediate ownership is vested in the universal legatee by the death of the testator. The conclusion reached by the trial judge is, of course, valid nevertheless but the applicable provision in this case is Article 1609. See also, Succession of Stevens, 137 La. 613, 69 So. 26, 27 (1915). The trial judge also found support in the French authorities:
“There are in the record offerings, translations and exhaustive briefs devoted to the applicability of Article 747 of the Code of Napoleon (which has its exact counterpart in Article 908 of the Civil Code) to testate successions. The Court was given the benefit of this research with the view that it would facilitate the Court in its determination and in the absence of any Louisiana jurisprudence holding specifically that Article 908 was applicable only to legal and irregular successions and did not apply to testate successions.
“It is well to note that it is the jurisprudence of France that Article 747 of the Code of Napoleon reading as follows :
‘Ascendants, to the exclusion of all others, inherit the things given by them to their children or their descendants who died without issue, when these objects are found in kind in the succession.’
has been applicable to legal successions and judicially decreed inapplicable to testate successions. See the translation of Planiol, the translation of Aubry, Rau and Esmein on the subject Droit Civil Francais by Professor Carlos E. Lazarus of the Law Institute of Louisiana and the faculty of the Louisiana State University Law School. Planiol has a rather extensive discussion of the *50 concept of Ardele 747, the pertinent portions of which read as follows:
‘If the donee completely transferred his interest in the donated property, no reversion takes place, for this property is not in the succession. If he transferred his interest only partly, for instance by burdening it with a servitude, the donor takes it back so encumbered and diminished.
‘There is no difference between the various forms of property transfers, whether for consideration or gratuitous, where inter vivos or by testament. It is also established today that even bequeathed property is exempted from reversion, although the decedent has kept it until his death. In a testate succession the legatee has acquired interest in his bequest on the day of the decedent’s death.’
“Professor Lazarus in his translation of IX Aubry et Rau et Esmein, Droit Civil Francois, 1953, Section 608, under the title ‘Of the Legal Return,’ p. 447 et seq., had this to say on page 4:
‘ * * * that the right of return cannot take place in the following cases:
‘(a) When the descendant has disposed by donation inter vivos or by testament of the things given by the ascendant.’
“It is also the Court’s recollection that Professor Lazarus’ testimony was unequivocal to the effect that Article 908 had no application in testate successions.
“On page 5 of Professor Lazarus’ translation we find the following Footnote 44:
‘44. This proposition, as to which there is no doubt whatever concerning the property which the deceased has disposed of inter vivos, has been contested, we believe erroneously so, with regard to property which he has disposed of by testament. Indeed, saving the case of the reserved portion in legitimate successions which is not an issue in these cases, the testamentary succession has disposed of the property, and therefore, it is not admissible to say that the property is still found in the succession for the purposes of the legal return which is a right of succession ab intestato. To this effect see: Boucheul, Des conventions de succeder, ch. XI, Nos. 75 et seq.; Ricard, Des donations, Part III, Nos. 768 et seq.; Chabot, on Art. 747, No. 20; Toullier, IV, 234; Demolombe, XIII, 521; De Loynes, D., 92, 2, 269; Baudry-Lacantinerie et Wahl, I, No. 714; Colin et Capi-tant, III, No. 994; Maury et Vialleton, No. 176; Req., 17 December, 1812, Sr., 13, 1, 409, Montpellier, 31 May, 1825, Sir., 26, 2, 14; Besancon, 30 July 1828, Sir., 29, 2, 176; Civ.., 16 March, 1830, Sir., 30, 1, 121; Bordeaux, 15 April, 1831, Sir., 31, 2, 177; Req., 2 Jan., 1838, Sir., 38, 1, 634, Orleans, 14 March, 1902, Sir., 1904, 2, 276; D., 1903, 2, 504; Req., 20 Nov., 1922, Sir., 1924, 1, 196 (donation of usufruct to spouse); Montpellier, 20 Oct., 1948, Gaz. Pal, 1948, 2, 244 (universal legacy). See Contra; Agen, 13 March, 1817, Sir., 22, 2, 300; Agen, 11 December, 1827, Sir., 29, 2, 74; Toulon, 22 March, 1950, Gaz. Pal., 1950, 2, 73.’

(French citations omitted)
“Although this review of the French translators and the jurisprudence of France has been of great informative value, it certainly leaves no doubt that had this cause arisen in France the same disposition of it would have been made as is made herein. However, this cause has been determined upon the law as we find it in the Civil Code of Louisiana and the jurisprudence contained in the case of Tulane University v. Board of Assessors, 115 La. 1025, 40 So. 445, *51 in which Justice Provosty was the organ of the court; and further that the doctrine of ‘Le mort saisit le vif’ is so firmly established in the jurisprudence of Louisiana that it permits no confrontation.”
Inasmuch as Como Plantation passed to Mr. Petersen under his daughter’s will, his alternative demand for reimbursement is moot.
Lastly, we consider the question of ownership of certain movable property. Unfortunately, the alleged donor, Mrs. Wood, was unable to testify because of old age and infirmity and the alleged donee, her granddaughter, had died. It had been Mrs. Wood’s habit over a long period of time to write or dictate various lists of household items at Como Plantation and to indicate which of her children or other relatives she desired to have certain items. The question is whether these lists could be taken to prove donations inter vivos or whether they indicated her desired distribution after her death.
The trial judge found that a clause in Mrs. Wood’s will evidenced an intention that the distribution would be effected after her death:
“I have written three separate papers attached to this will, disposing of my personal property to my sons, and whatever remains in my Como Residence goes to Lacy B. Petersen.”
Those lists were entitled “Jim’s List”, “Frank’s List”, and “Earl’s List”. Other lists introduced in evidence included one entitled, “Lacy’s List of what I want her to have from Como house” and one entitled “Lacy B.’s List”, which, significantly did not mention the grand piano discussed below.
Two former friends of Lacy B. Petersen testified that they had heard either her or Mrs. Wood, or both, refer to certain items as belonging to Lacy. Other relatives, however, and Mr. Petersen himself testified that they understood that the property would only pass by inheritance after Mrs. Wood’s death. The only item that all witnesses agreed had in fact been given was a grand piano, which Mrs. Wood had given to her daughter, Mary Lacy Wood Petersen, and which had passed to Lacy B. Petersen after Mrs. Petersen’s death, although it always remained at Como Plantation.
In addition to this general understanding about the ownership of the piano, two other lists not referred to in the will tend to corroborate the fact of that donation inter vivos. The piano is included in a list written by Mrs. Wood entitled “I, Mary B. Wood of Brandon, Louisiana, have for safe keeping the following articles belonging to Mr. and Mrs. D. E. Petersen”. It is also on a list entitled “Dudley Owns” and referred to in the following sentence:
“The 2 chairs in Hall belong to Mary Lacy Wood & an armoire in room over D. room also the piano in T.V. room which she left to her daughter L.B. * * * ”
As noted above, the piano was not on “Lacy B.’s List”, which was found with the sons’ lists and the will. Mr. Petersen testified that other items on the last two lists had been acquired by him or his wife. Many of them had been placed or kept at Como Plantation only temporarily. The trial judge did not mention those items in finding insufficient proof of donations inter vivos by Mrs. Wood. Certainly, those two lists were not included in the reference in Mrs. Wood’s will to the three lists naming her sons and the general phrase that the remainder would go to Lacy B. Petersen. We do not find merit under these circumstances in the contention that a donation inter vivos had been made of all furnishings on “Lacy B.’s List” on the theory of constructive delivery since she owned the house where they were situated. The facts tend to show a contrary intent by Mrs. Wood.
We therefore amend the judgment of the lower court by finding that the *52 testimony of the witnesses, corroborated by the language of the “safe keeping” and “Dudley Owns” lists, is sufficient to prove a prior donation inter vivos of the grand piano. We further find that Mr. Petersen is entitled to those items on said lists which were previously acquired by him or his wife.
Mr. Petersen testified that these lists included “certain items that actually were ours that we brought from other places or items that Mrs. Wood had given to her daughter and then later her granddaughter.” For reasons stated above, we cannot accept his testimony alone to prove that some items were donated by Mrs. Wood, but his unrebutted testimony relative to the separate acquisition or retention for years of items by him or his wife is sufficient to support his claim for those items. At the trial Mr. Petersen read through the lists and commented on the various items. It is the opinion of this court that his testimony has proved by a preponderance of the evidence the prior ownership of the following items:
On the “safe keeping” list:
(a) One (1) corner what-not; (Mr. Petersen’s comment: has been located at his residence in Beaumont)
(b) One (1) bronze Dresden clock; (from Petersen family)
(c) One (1) parlor rosewood safe; (bought in New Orleans by Mrs. Wood and Mary Lacy Petersen, has been in Beaumont for years)
(d) One (1) rosewood marble top table; (given to Mrs. Petersen by an aunt)
(e) One (1) rosewood marble top bureau, S-drawer; (also bought in New Orleans and located in Beaumont)
(f) One (1) two-part Sheridan dining room table; (renovated by Petersen in 1946, has been in Beaumont)
(g) One (1) triple plate tea set, with extra waiter; (from Petersen family)
(h) One (1) King Edward cup and saucer; (bought in Canada by Petersen)
On the “Dudley Owns” list:
(a) One (1) pewter tea set; (gift to Mary Lacy by Mrs. Petersen)
(b) One (1) big glass green lamp; (bought by Petersen in Chicago)
(c) One (1) chandelier in t.v. room; (bought by Petersen in Chicago)
For the above and foregoing reasons, the judgment appealed from is amended and, as amended, affirmed, at appellant’s costs.
Amended and affirmed.

. The contestant in her stead is Prank B. Wood as the executor of her estate.