292 So.2d 420 (1974)
Lawrence Rodney McDONNELL, Appellant,
v.
STATE of Florida, Appellee.
No. 73-102.
District Court of Appeal of Florida, Fourth District.
March 15, 1974.
Richard L. Jorandby, Public Defender, and Richard S. Power, Asst. Public Defender, West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Frank B. Kessler, Asst. Atty. Gen., West Palm Beach, for appellee.
DOWNEY, Judge.
Defendant was charged with forgery in September 1972. On January 16, 1973, one week prior to trial, defendant filed a motion to suppress any oral or written confessions or statements, and immediately attempted to obtain a hearing thereon. There was no time available on the judge's calendar, so the motion was not heard prior to trial.
The case was called for trial on January 23, 1973, and after the jury was sworn, defendant requested the court to hear the motion to suppress, but the court refused on the ground that counsel should have filed the motion at an earlier date so as to have it heard prior to trial. Thus, the cause proceeded to trial, and defendant's confession was admitted into evidence over defendant's objection.
The uncontradicted evidence showed that defendant presented a signed savings account withdrawal slip to the First National Bank of Pompano on an account belonging to Edmond E. Stafford. The signature on the slip did not coincide with the bank's signature card so the teller sought the advice of a bank vice-president. The latter officer discussed the matter with defendant, who attributed the difference in the signatures to a recent serious illness and hospitalization. When asked for some identification, defendant advised the officer he had none as his wallet was stolen or lost while he was in the hospital. The officer then had defendant sign another signature card and instructed the teller to honor the withdrawal. Defendant was identified unequivocally by both the teller and officer as the person who had made the withdrawal in question. The owner of the account testified he had never given defendant permission to make the withdrawal. Other Williams rule evidence (Williams v. State, Fla. 1959, 110 So.2d 654) *421 showed defendant had made numerous subsequent similar raids on the same account.
It is our view that under the circumstances the trial judge committed error in refusing to hear the motion to suppress upon defendant's request before proceeding with the trial. Defendant complied with Rule 3.190(i) RCrP, 33 F.S.A., by filing his motion prior to trial. That it was not heard prior thereto could not be helped; defendant tried to obtain a hearing before trial, but the trial judge was engaged with other matters on his docket.
However, the error in denying defendant's motion and admitting the confession without an evidentiary hearing is harmless beyond a reasonable doubt, Harrington v. California, infra, because there is other overwhelming evidence establishing defendant's guilt. We have not overlooked the question of the propriety of applying the harmless error rule to constitutional errors; in fact we find adequate precedent therefor. The appellate courts of Florida have acknowledged the applicability of the harmless error rule to the erroneous admission of confessions. Daugherty v. State, 154 Fla. 308, 17 So.2d 290 (1944); Melton v. State, 159 Fla. 106, 30 So.2d 916 (1947); Simpson v. State, Fla. App. 1968, 211 So.2d 862; Blatch v. State, Fla.App. 1968, 216 So.2d 261. So also has the Supreme Court of the United States recognized the application of the harmless error rule to constitutional errors, including confessions. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). Considering the evidence in its totality, it appears to us this is an appropriate case for application of the harmless error statute. § 924.33 F.S. 1971, F.S.A.
Accordingly, the judgment and sentence of the lower court is affirmed.
OWEN, C.J., concurs.
WALDEN, J., dissents, with opinion.
WALDEN, Judge (dissenting):
A cursory reading of the majority opinion would leave a good taste in the mouth of the uninitiated. It indicates that the trial court's violation of a pre-trial procedure rule was harmless because obviously the defendant was guilty. It commends itself to those critics who are frequently heard to clamor and cry that courts are forever turning loose criminals based on "technicalities." It catalogs under the currently popular heading of "law and order."
I view the proposition differently, with my thinking 180° in opposition to that of the majority. As I see it, and respectfully suggest, the gravity and wrongness of the majority decision cannot be overstated. And yet, while disagreeing, I hope to do so agreeably and with respect for my differing brethren.

THE ERROR
Defendant was tried by jury and convicted and sentenced for forgery. In so doing there was committed a judicial error of constitutional dimension. Its fundamental nature is of such moment as to defy being swept under the rug as some sort of harmless error.
For beginning and basics, the defendant was deprived of a hearing on a motion to suppress. He made his motion to suppress, and there is no doubt but that the motion was timely, sufficient under the Rule, and properly brought to the trial court's attention. Regardless, the trial court refused to conduct a hearing  refused to allow evidence  and refused to adjudicate the legality of the defendant's confession and whether the same should be thereby suppressed. Instead, the trial proceeded and *422 the confession was received in evidence over defendant's objection and he was convicted. Simply stated, the defendant was deprived of his right to show that he was being compelled to be a witness against himself and deprived of due process of law contrary to the protections of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, § 9 of the 1968 Florida Constitution, F.S.A. The vehicle, the way, the procedure whereby these constitutional rights are protected and afforded to defendants in criminal cases is Rule 3.190(i), F.R.Cr.Proc., as follows:
"(i) Motion to Suppress a Confession or Admissions Illegally Obtained.
"(1) Grounds. Upon motion of the defendant or upon its own motion, the court shall suppress any confession or admission obtained illegally from the defendant. (Emphasis added.)
"(2) Time for Filing. The motion to suppress shall be made prior to trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion or an appropriate objection at the trial. (Emphasis added.)
"(3) Hearing. The court shall receive evidence on any issue of fact necessary to be decided in order to rule on the motion." (Emphasis added.)
This is the procedural law of this state. It is prescribed by the Florida Supreme Court and as such it is binding upon the courts and the judiciary of this state  and not just sometimes. Its multiple use of the word, "shall," admits of no discretion or question. When the motion is made the trial court shall conduct a hearing and shall receive evidence and shall suppress illegal confessions. When a hearing is denied on such a motion, there could hardly be a clearer reflection of error. And the majority concedes that error, but deems it harmless.

THE LAW
The harmless error rule was designed to make the judicial "process perform ... without giving men fairly convicted the multiplicity of loopholes which any ... rigid ... scheme of errors ... will reflect in a printed record." Kotteakos v. United States, 328 U.S. 750, at 760, 66 S.Ct. 1239 at 1245, 90 L.Ed. 1557 (1946). The harmless error rule, then, was designed to be a check on needless and unmerited appeals based on technical niceties or on reasonable claims that were simply not important enough to merit reversal. The error at hand cannot by any stretch of the imagination be called a technical nicety or a claim which would not merit reversal.
The majority turns its decision upon the theory of harmless error. They rely, without any particular discussion, upon the following state and federal cases: Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); and Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Daugherty v. State, 154 Fla. 308, 17 So.2d 290 (1944); Melton v. State, 159 Fla. 106, 30 So.2d 916 (1947); Blatch v. State, 216 So.2d 261 (3d D.C.A.Fla. 1968); and Simpson v. State, 211 So.2d 862 (3d D.C.A.Fla. 1968).
It is this writer's opinion that neither Florida nor federal authority mandate the majority's finding of harmless error. The Florida cases cited by the majority are distinguishable by time and by fact. In each case, except Daugherty, the subject defendant did not request a hearing on the confession. (In Melton the court decided that, in fact, the confession was not coerced.) In Daugherty, decided in 1944, a confession was allowed into evidence though the defendant claimed it was not freely made. The court said, "it cannot be said that the evidence affected the verdict." In the *423 present day, when guards against involuntary confessions are so strong as to warrant the rule of suppression, this view can not be controlling.
What is controlling can be found in both Florida and Federal Law. The Florida cases of Foster v. State, 255 So.2d 533 (1st D.C.A.Fla. 1971) and Allen v. State, 239 So.2d 33 (1st D.C.A.Fla. 1971) stand for the proposition that the inclusion of a confession without a hearing on admissibility is improper per se. True, the question of whether it could be harmless error was not directly confronted in either Foster or Allen and for consideration we turn to Federal authority.
The question is precisely faced in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The Supreme Court held that the evidence as to the admissibility of a confession could not be reviewed before a jury  and the admissibility determined by that jury. The court held that the trier of law must decide the issue of voluntariness, because jury determination of confession voluntariness would not afford proper protection of the defendant. The court held:
"It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction." 378 U.S. at 376, 84 S.Ct. at 1780 (Emphasis added.)
"A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined." Id. at 380, 84 S.Ct. at 1783. (Emphasis added.)
Really, nothing further need be said: The Jackson case lays waste the majority notion that illegal and coerced confessions might be a harmless error proposition and that a defendant has no real and enforceable right to a fair hearing on the issue.
The majority cites to Federal authority for the proposition that constitutional errors can be harmless, however these are distinguishable. In Harrington the confessions of co-defendants were admitted (although defendant had no right of confrontation). In Brown petitioners' statements about each other were admitted; and in Milton the confession entered was deemed harmless error because other, properly obtained, confessions were part of the evidence. In Chapman the Supreme Court found a constitutional error not harmless. The Chapman court held that for error of constitutional dimensions to be harmless it must be harmless "beyond a reasonable doubt." In the instant case the plain and simple fact is that petitioner was not granted a hearing on a motion to suppress  we can not surmise what effect this confession had upon the jury; see Payne v. State, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958), and this can not be harmless error beyond a reasonable doubt. See 9 Fla.Jur. Criminal Law § 155 (1972).

IMPACT
The simplistic rationale of the majority is that if the appellate court, upon a review of the cold record, determines that a defendant is guilty then there can be no harmful or reversible error.
As the majority have seen fit to characterize their position "Fifty Million Frenchmen can't be wrong,"[1] this means, in their application, if there are a whole bunch of witnesses to the crime there can be no harmful error regardless of kind or dimension. And so, as I understand it, the majority could approve the summary execution of sentence upon Jack Ruby because the nation witnessed the criminal event on television when he shot Oswald. I can see no way to stop short if they are correct. *424 Where someone is patently guilty, I would suppose that our society would find no need to afford a jury trial or even any kind of trial  no need to warn via Miranda  no need to furnish counsel via Escobedo  no need to allow the defendant to call witnesses or confront his accusers, etc. We could just sentence him to his just desserts and if he had the temerity to appeal, we would just point to his guilt and term all the constitutional and statutory transgressions as harmless.
Well, the position has a certain logic and appeal, at least in the interest of expediency. But then so did vigilante justice, the lynch rope and Star Chamber proceedings.
Our judgments, hopefully, have some instructional and educational value. As we know in our adversary system, the prosecution prosecutes and the defense defends to the fullest extent, limited only by law and ethics, and this is expected. Thus, the majority opinion serves to tell the prosecution and the overseeing trial judge that it is permissible to proceed in the fashion here reflected so long as there is strong evidence of guilt. Well, I'm not so pessimistic as to feel that anyone in the profession would deliberately go this route since they would be held back by basic notions of fair play, if nothing else. However, our rights are seldom destroyed instanter, they are usually eroded with passage of time. Thus, a busy trial judge who inadvertently fails to accord a defendant his proper hearing, and the prosecution having gained conviction in the face of the omission, will find solace in the majority opinion and fall back on it. And so the matter will grow and the principle weaken.
How about the true correctness of the majority premise? It rests upon their appellate determination from the printed page that the defendant is guilty. It rests upon their assessment of the evidence, that evidence being much less (on account of the confession elimination) than what was before the jury when it deemed the defendant guilty. I am not so sanguine as to believe that this is the equivalent of a jury trial by one's peers with that jury having the right to see and hear the witnesses and assign weight and to reject.
Many, if not most, convictions are obtained by use of confessions. There can, of course, be no more damning piece of evidence than a confession by the party charged. Eliminate it and you must necessarily obtain the conviction by use of third party testimony. The jury is not necessarily required to believe them even though such testimony may be unequivocal. Thus, I feel that those acquainted with the criminal law process will readily recognize  assuming the correctness of the majority viewpoint  that there will theoretically, and in truth, be many instances where a jury would refuse to convict but appellate judges viewing that self-same evidence on appeal encrusted with a guilty verdict would find it sufficient. It is not a process I would wish to endure. In conclusion, on this account, I can not say as a matter of law that the jury would have convicted this defendant absent the confession and I do not believe my colleagues can do so, either.
This is not merely a matter of academic exercise. In the face of his motion and the trial court refusal to accord a hearing, we must assume that the jury convicted with the illegal use of an inadmissible confession.[2] This is serious. However, lest this writer be misunderstood, I carry *425 no brief for this defendant. He may very well be guilty and could be so found if retried. Further, if my views were adopted it could be that on proper hearing it will be determined that his confession is admissible and there would be no new trial.
My concern is that no man  including this defendant  should be convicted and incarcerated except after having been furnished due process of law and his very real constitutional rights.

CONCLUSION
I am dismayed by the consequence of the majority opinion and unable to fathom the reason why that opinion flatly and totally refuses to recognize, distinguish or follow the precisely governing authority provided in Jackson v. Denno, supra; Foster v. State, supra; and Allen v. State, supra.
For the reasons stated I would reverse and remand with instructions that a hearing be conducted upon the issue of the admissibility of defendant's confession. If that hearing reflects that the confession was illegally obtained and inadmissible, then a new trial must be accorded to appellant. Jackson v. Denno, supra. Cf. Foster v. State, supra, Allen v. State, supra, as to procedure on remand.
I do respectfully dissent.

ADDENDUM TO DISSENTING OPINION
The initial opinion was issued on March 15, 1974. Subsequent thereto on March 20, 1974, the Supreme Court of Florida addressed itself to the selfsame problem in its opinion in Land v. State, 293 So.2d 704, (Fla. 1974). It, apparently assuming and taking for granted, as have all Florida courts that have considered the problem, that the failure to accord a defendant a proper hearing per Rule 3.190(i), F.R.Cr.P., constituted harmful and reversible error, came to the conclusion that an unqualified new trial was thereby mandated.
Thus, the dissenting opinion is hereby amended to reach harmony with Land v. State, supra. I would, therefore, reverse and remand with instructions that defendant be granted a new trial.
NOTES
[1] Bartlett, Familiar Quotations, Centennial Edition, 1008a.
[2] The grounds of defendant's motion are reflected:

"COMES NOW the Defendant by and through his undersigned attorney, for the Seventeenth Judicial Circuit of Florida in and for Broward County, and moves this Court to suppress as evidence at the time of trial in the above-styled cause all written and oral statements made by the Defendant to the police or other agents of the State or the State of Florida pursuant to Rule 3.190(i), Florida Rules of Criminal Procedure. As grounds for this Motion Defendant would therefore state:
"1. The written and oral statements were obtained from the Defendant in violation of the Defendant's right to counsel, and the Defendant's privilege against self-incrimination guaranteed by the Fifth, Sixth, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution as interpreted by the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
"2. The written and oral statements obtained from the Defendant were not freely and voluntarily given, in violation of the Defendant's rights guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and by Article I, Section 9 of the Florida Constitution (1968).
"3. The written and oral statements were obtained from the Defendant in violation of the defendant's right to be free of unreasonable searches and seizures guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution and by Article I, Section 12 of the Florida Constitution (1968). Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Betancourt v. State, 224 So.2d 378 (3d D.C.A. 1969); French v. State, 198 So.2d 668 (3d D.C.A. Fla. 1967).
"4. The Written and oral statements were obtained from the Defendant in violation of Fla. Stat. Sec. 901.06 and Sec. 901.23, F.S.A. Oliver v. State, 250 So.2d 888 (Fla. 1971); Jacobs v. State, 248 So.2d 48 [sic (515)] (1st D.C.A. 1971).
"5. The written and oral statements obtained from the Defendant are not supported by an independent prima facie proof of the corpus delecti of the crime for which the Defendant is charged."